57 F.3d 1327
 Flint Gregory HUNT, Petitioner-Appellant,
v.
Eugene M. NUTH, Maryland Correctional Adjustment Center and
Maryland Penitentiary; J. Joseph Curran, Jr.,
Attorney General of the State of
Maryland, Respondents-Appellees
(Two Cases).
 Nos. 94-4006, 94-4010.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 8, 1995.
Decided June 27, 1995.
 
 ARGUED: Denise Charlotte Barrett, Asst. Federal Public Defender, Baltimore, MD, for appellant. Gwynn X. Kinsey, Jr., Asst. Atty. Gen., Office of the Atty. Gen., Baltimore, MD, for appellees. ON BRIEF: James K. Bredar, Federal Public Defender, Gary W. Christopher, Asst. Federal Public Defender, Baltimore, MD, Judith R. Catterton, Rockville, MD, and Thomas C. Morrow, Towson, MD, for appellant. J. Joseph Curran, Jr., Atty. Gen. of Maryland, Office of the Atty. Gen., Baltimore, MD, for appellees.
 Before RUSSELL, MURNAGHAN, and WILLIAMS, Circuit Judges.
 Affirmed by published opinion. Judge RUSSELL wrote the opinion, in which Judge MURNAGHAN and Judge WILLIAMS joined.
 OPINION
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 Flint Gregory Hunt, a death row inmate awaiting execution in Maryland, appeals a number of issues arising from the district court's denial of his petition for writ of habeas corpus, which contested his capital conviction and sentence for murdering a Baltimore City policeman. Hunt also appeals the court's denial of his motion to vacate the judgment and to amend his habeas petition under Rule 60(b) of the Federal Rules of Civil Procedure. We affirm.
 
 I.
 
 2
 In this proceeding Hunt seeks collateral federal relief from the first degree murder conviction and sentence of death he received in the Circuit Court for Baltimore City in Maryland. The facts surrounding the murder are fully set forth in opinions by the Court of Appeals of Maryland. See Hunt v. State, 312 Md. 494, 540 A.2d 1125, 1126-27 (1988) (Hunt I ); Hunt v. State, 321 Md. 387, 583 A.2d 218, 225 (1990) (Hunt II ), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991). For background, we summarize the facts and procedural history pertinent to this appeal.
 
 
 3
 On November 18, 1985, Officer Vincent Adolfo, a Baltimore City policeman, noticed a Cadillac with a missing window covered with plastic. The car contained four occupants. He made a routine inquiry and learned that the car had been stolen. Two officers in separate patrol cars responded to his request for back-up and blocked the path of the on-coming Cadillac. Upon nearing the roadblock, the driver, later identified as Hunt, jumped out of the car while it was still moving and ran up a nearby alley.
 
 
 4
 Officer Adolfo pursued Hunt into the alley. The officer apprehended Hunt, positioned him against a wall, and tried to handcuff him. Hunt pushed away, knocking the officer off balance. Hunt then pulled a single-action .357 Magnum revolver from his jacket and shot Officer Adolfo in the chest at close range. Within seconds, as the officer reeled from the first shot, Hunt shot him again, this time in the back. Hunt fled the scene of the crime. Officer Adolfo was pronounced dead at the hospital.
 
 
 5
 Hunt's sister testified at trial that Hunt had seemed fine that night, although his girlfriend, Deborah Powell, said that Hunt had been taking drugs earlier that afternoon and appeared "high" when he had left her. Hunt was apprehended in a Tulsa, Oklahoma, bus station five days later.
 
 
 6
 In June 1986, a jury convicted Hunt of first degree murder, using a handgun in the commission of a crime of violence, and unlawfully carrying a handgun. In July 1986, the same jury imposed a sentence of death on Hunt for the murder conviction. The trial judge imposed consecutive punishments of twenty years imprisonment for the charge of using a handgun and three years imprisonment for the charge of carrying a handgun.
 
 
 7
 In Hunt I, the Court of Appeals of Maryland affirmed the convictions and the twenty-year sentence for the use of a handgun charge. The court, however, vacated the death sentence and ordered a new sentencing hearing because victim impact evidence admitted during the sentencing hearing violated Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).[1] The court also vacated the conviction for carrying a handgun because the charge merged with the other handgun charge.
 
 
 8
 The state circuit court conducted a second capital sentencing hearing before another jury between November 29 and December 21, 1988. This jury also sentenced Hunt to death. The Court of Appeals of Maryland affirmed the death sentence in Hunt II, and the United States Supreme Court denied Hunt's petition for certiorari review, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991). On June 1, 1992, Hunt filed in the state circuit court a petition for post-conviction relief, which the court denied on April 13, 1993. Hunt next applied to the Court of Appeals of Maryland for discretionary review of the circuit court's denial of post-conviction relief. The Court of Appeals denied Hunt's application and his motion for reconsideration. On February 28, 1994, the Supreme Court denied Hunt's petition for certiorari review of the denial of state post-conviction relief. Hunt v. Maryland, --- U.S. ----, 114 S.Ct. 1206, 127 L.Ed.2d 554 (1994).
 
 
 9
 On May 13, 1994, Hunt filed a federal habeas corpus petition under 28 U.S.C. Sec. 2254 in the United States District Court for the District of Maryland. The district court denied Hunt's amended habeas petition on June 27, 1994. Hunt v. Smith, 856 F.Supp. 251 (D.Md.1994) (Hunt III ). In September 1994, the Office of the Federal Public Defender for the District of Maryland, appointed by this Court on July 29, 1994 as a consultant for Hunt in the pending appeal, filed in the district court a motion to vacate judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The State agreed, at Hunt's request, not to file a response unless the district court asked for one. The district court denied Hunt's Rule 60(b) motion on September 9, 1994. This Court consolidated Hunt's appeal from that decision with his appeal from the district court's original judgment denying habeas relief.II.
 
 
 10
 We first address the claims that the district court denied in Hunt's habeas petition. Hunt contends that several errors by his trial and resentencing counsel deprived him of his Sixth Amendment right to effective assistance of counsel. In order to prevail, Hunt must satisfy both the performance and prejudice prongs of Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 2064-65, 80 L.Ed.2d 674 (1984). First, he must establish that his counsel's performance fell below an objective standard of "reasonableness under prevailing professional norms." Id. at 687-88, 104 S.Ct. at 2065. Second, he must demonstrate that he was prejudiced by his counsel's deficient performance such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.
 
 
 11
 Strickland instructs us to review counsel's representation "on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690, 104 S.Ct. at 2066. Furthermore, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. Determinations of historical facts by the state court are presumptively correct, and the district court's factual findings are reviewed for clear error, but "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact" subject to de novo review. Id. at 698, 104 S.Ct. at 2070; Fields v. Attorney General of Md., 956 F.2d 1290, 1297 n. 18 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 243, 121 L.Ed.2d 176 (1992).
 
 A.
 
 12
 Hunt contends that with competent representation at trial he could have been convicted of second degree murder instead of first degree murder and thus would have been ineligible for the death penalty under Maryland law. See Md.Ann.Code art. 27, Sec. 412(b)-(c). Hunt first argues that his trial counsel erred by reserving opening statement until the close of the State's case. Hunt's experts on trial strategy testified at the post-conviction hearing that reserving opening statement is uncommon and highly criticized by experts in trial advocacy. Nonetheless, we agree with the district court that such a decision is fundamentally tactical and "within the range of reasonably competent representation." Hunt III, 856 F.Supp. at 257
 
 
 13
 Hunt next faults his trial counsel for failing to develop a single cohesive defense theory.[2] Hunt argues that because the evidence that he had shot Officer Adolfo was overwhelming, his trial counsel only confused or distracted the jury by challenging the criminal agency aspect of the State's case and, instead, should have focused on whether he was guilty of first or second degree murder. Hunt's experts testified that his trial counsel should have conceded that Hunt committed the crime and should have argued that the murder was not willful, deliberate, or premeditated and that Hunt was voluntarily intoxicated when he shot the officer. Trial counsel's decisions regarding the selection of the best defense plan, however, involved tactics well within professionally reasonable conduct that should not be second-guessed by this Court under Strickland.
 
 
 14
 More specifically, Hunt challenges the performance of his trial counsel during the cross-examination of State witnesses who had testified as to the timing of the two gun shots. Hunt argues that his trial counsel should have attempted to discredit Aaron McNair, who provided unfavorable testimony that Hunt ran behind Officer Adolfo between shots, and should not have impeached Donna McGuigan,[3] who provided favorable testimony that the shots occurred in rapid succession. Our review of the record, however, indicates that trial counsel did attempt to impeach McNair regarding criminal charges pending against him and the assistance he had received from the prosecution. Joint Appendix (J.A.) 60-62. Furthermore, McGuigan's testimony at trial contradicted her earlier statement to the police and was inconsistent with the evidence regarding the location of the officer's body. Therefore, we agree with the post-conviction court that these criticisms by Hunt's experts "constitute a grading of the quality of counsel's cross-examination. None of the suggested errors or omissions is of such magnitude as to place the conduct outside of prevailing professional norms." J.A. 731-32.[4]
 
 
 15
 Hunt also contends that his trial counsel failed to marshal favorable evidence corroborating Hunt's intoxication from his drug use at the time of the shooting. Hunt claims that his trial counsel failed to introduce the testimony of Cynthia Stokes, a passenger in the Cadillac who told police that Hunt was "flighty as from cocaine." J.A. 747. However, trial counsel reasonably could have considered Stokes an unreliable witness because she barely knew Hunt and because she had been convicted of many crimes involving dishonesty. Moreover, because Deborah Powell and Angelo Williams testified that Hunt had used a variety of drugs on the day of the shooting, Stokes' additional testimony would have been merely cumulative. Thus, trial counsel's tactical decision not to develop Stokes' testimony was reasonable and did not prejudice him.
 
 
 16
 Hunt also claims that his trial counsel failed to investigate and introduce into evidence a hand rolled cigarette butt containing plant material found in the ashtray of the Cadillac. A police lab report identified the material as marijuana, but the state's chemist did not test for the presence of phencyclidine (PCP).[5] The post-conviction court found that, at best, the presence of PCP in the cigarette butt could not be shown. J.A. 734-35. In any event, given the abundance of testimony pertaining to Hunt's drug use on the day of the shooting, Hunt cannot demonstrate the requisite prejudice to satisfy Strickland.[6]
 
 
 17
 Although Hunt persuasively argues that he did not receive the best possible representation at trial, Strickland only requires adequate counsel judged by a standard of reasonableness in light of the prevailing norms of practice. Strickland, 466 U.S. at 687-88, 104 S.Ct. at 2064-65. Thus, we affirm the district court's ruling that trial counsel's decisions, although readily assailable by experts in trial advocacy equipped with twenty-twenty hindsight, were essentially tactical choices within the realm of reasonable assistance of counsel. Furthermore, we conclude that Hunt also has failed to demonstrate that he was prejudiced by trial counsel's conduct to the extent of undermining confidence in the outcome of the trial.B.
 
 
 18
 We now turn to Hunt's claim that errors by his resentencing counsel constituted ineffective assistance under Strickland. First, Hunt argues that resentencing counsel failed to introduce relevant mitigating evidence that could have swayed the jury from imposing a death sentence. The jury knew that Hunt had been convicted of a handgun offense, but resentencing counsel neglected to inform the jury of the twenty-year sentence Hunt received for the offense. See Harris v. State, 312 Md. 225, 539 A.2d 637, 649-50 (1988) (holding that a jury could consider other sentences imposed on a defendant for offenses related to the capital crime as mitigating circumstances). Resentencing counsel clearly had no strategic or tactical reason to omit this evidence. In fact, Hunt's counsel attempted to correct the mistake after the close of evidence, but the court refused to instruct the jury on the sentence Hunt received or reopen the evidence so counsel could do so.[7]
 
 
 19
 Hunt contends that this error prejudiced him in two ways. First, he speculates that members of the jury may not have imposed the death sentence if they had known that he already had received a twenty-year sentence that could be served consecutively to a life sentence imposed for the murder charge. Although this could have been a consideration for the jury regarding Hunt's future dangerousness, the jury would not have known whether the twenty-year sentence would run consecutively or concurrently to the life sentence because the judge would make that determination after the jury determined Hunt's sentence for the murder charge. See Hunt II, 583 A.2d at 226. The Court of Appeals of Maryland calculated that an additional twenty-year sentence, if served concurrently with the life sentence, would have delayed Hunt's eligibility for parole by only one year. See id. at 227. Therefore, we agree with the district court that Hunt was not prejudiced by resentencing counsel's error because the negligible difference in parole eligibility did not establish a reasonable probability of a different outcome. Cf. Simmons v. South Carolina, --- U.S. ----, ---- - ----, 114 S.Ct. 2187, 2193-94, 129 L.Ed.2d 133 (1994) (plurality opinion) (noting that the crucial significance of parole ineligibility in a capital sentencing is its relationship to future dangerousness and the ultimate objective of incapacitating the offender from inflicting future harm on society).
 
 
 20
 Hunt's second claim of prejudice derives from his related contention that the jury may have punished him for both the murder and the handgun charge because they were unaware of any sentence imposed for the handgun charge. See Harris, 539 A.2d at 650. Although the district court did not address this particular argument, our review of the record indicates that Hunt has not demonstrated a reasonable probability that he was prejudiced in this manner. Because the severity of Hunt's capital crime, murdering a police officer, eclipses that of a handgun offense, we find it highly unlikely that the existence of the handgun offense caused the jury to impose a sentence of death that it would not have imposed otherwise. Therefore, we find no reasonable probability that the jury improperly imposed a death sentence in part to punish Hunt for the handgun offense.[8]
 
 
 21
 Hunt also contends that resentencing counsel failed to present alternatives less onerous and prejudicial than leg-iron shackling to ensure public safety during the resentencing proceedings. The court had responded to the concerns of Judge Edward Angeletti, the chair of the court's security committee, about Hunt's ability to escape from a street-level courtroom with windows by ordering him shackled midway through the resentencing hearing.[9] Resentencing counsel cross-examined Judge Angeletti and vigorously objected to the shackling, but Hunt faults his counsel for not suggesting an alternative such as moving to a windowless courtroom on an upper level of the courthouse. Given resentencing counsel's efforts to protest the shackling and Judge Angeletti's reasonable safety concerns, we agree with the district court that counsel's failure to suggest an alternative did not violate the performance prong of Strickland.
 
 III.
 
 22
 Hunt next claims that the state court violated his constitutional rights by refusing to charge the resentencing jury that they had the option of sentencing him to life without parole under Md.Ann.Code art. 27, Sec. 412. The district court swiftly dismissed this argument as bordering on frivolous because the Court of Appeals of Maryland has determined as a matter of Maryland law that the life without parole sentence cannot be imposed retroactively on persons convicted before July 1, 1987, the effective date of the governing statute. Hunt III, 856 F.Supp. at 256 (citing Collins v. State, 318 Md. 269, 568 A.2d 1, 15(Md.), cert. denied, 497 U.S. 1031, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990)). Hunt challenges the ruling in Collins by attempting to raise constitutional claims that a federal court can review.
 
 
 23
 Hunt first suggests that the Maryland legislature gave him the right to the instruction for a life without parole sentencing option by enacting the statute creating that option in 1987, and that the Maryland courts deprived him of this liberty interest in violation of due process by not construing the statute to apply retroactively. However, when the Court of Appeals of Maryland held in Collins that the statute did not apply retroactively, a holding to which this Court is bound, see Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991), it implicitly held that the Maryland legislature did not create the liberty interest for those defendants convicted before the effective date of the statute. Therefore, Hunt cannot claim that the Maryland courts deprived him of a liberty interest without due process.
 
 
 24
 Hunt also challenges the statute on equal protection grounds. He argues that the statute, if it applies only prospectively, creates an irrational distinction between unsentenced defendants who committed crimes before the statute's effective date and those who committed crimes after the effective date. However, we conclude that a rational basis exists for the distinction. The Maryland legislature could have been concerned with avoiding ex post facto claims. For example, if the statute applied retroactively, a defendant who committed a crime before the statute's effective date and received a sentence of life without parole could argue that he received a greater sentence than if he had received only a life sentence with the possibility of parole.
 
 
 25
 Although Hunt would not have been disadvantaged by retroactive application because life without parole clearly is a lesser penalty than a death sentence, the legislature could have rationally been concerned about defendants who did not receive a death sentence and could raise an ex post facto claim. The Court of Appeals of Maryland also has ruled that a defendant cannot waive the ex post facto defense to insulate his sentence from appeal or collateral attack. White v. Maryland, 322 Md. 738, 589 A.2d 969, 974 (1991). Therefore, because the Maryland legislature had a rational basis for not enacting the statute to apply retroactively, we reject Hunt's claim that Maryland's life without parole sentencing statute violates the Equal Protection Clause.
 
 IV.
 
 26
 We next turn to Hunt's claim involving Maryland's system of appellate review. In particular, he argues that Maryland's discretionary review of post-conviction proceedings[10] violates his Eighth Amendment rights and his rights to due process and equal protection under the Fourteenth Amendment. The district court rejected these arguments, primarily because there is no basis for requiring state courts to afford plenary appellate review in post-conviction cases. Hunt III, 856 F.Supp. at 255-56 (citing Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) (noting that the federal constitution does not confer a right to a direct appeal from a criminal conviction)). Furthermore, because federal habeas review is largely de novo, the district court reasoned that additional state court proceedings probably would add little to the review of post-conviction claims. Id. at 256.
 
 
 27
 Although the Constitution does not require states to provide a system of appellate review, such systems that states choose to provide must comport with due process requirements. Evitts v. Lucey, 469 U.S. 387, 400-01, 105 S.Ct. 830, 838-39, 83 L.Ed.2d 821 (1985); Billotti v. Legursky, 975 F.2d 113, 115 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993). In Billotti, we ruled that West Virginia's discretionary appellate review of convictions did not offend notions of due process because defendants received an adequate opportunity to challenge errors occurring during trial. Billotti, 975 F.2d at 116. We reasoned that "[t]he Fourteenth Amendment does not authorize the federal courts to micromanage state criminal justice systems.... It is enough that they serve the needs of the state which adopted them, and that they afford an ample measure of procedural fairness to criminal defendants seeking an appeal." Id. (citations omitted).
 
 
 28
 Although Billotti involved a defendant sentenced to life imprisonment who challenged West Virginia's system of direct appeals, we find its reasoning equally persuasive when applied to a capital defendant's challenge of Maryland's discretionary post-conviction system. Maryland provides considerable procedural protections for criminal defendants who pursue post-conviction relief including the right to appointed counsel, the right to file briefs, and the right to have the application considered on a formal appellate record. See Md.Rule 8-204.[11] In addition, Hunt does not explain how an appeal of right would have improved the post-conviction court's determinations of his claims. See Billotti, 975 F.2d at 118. He complains that the court refused to review only his ineffective assistance of counsel claim, but, as the district court observed, he could raise this claim in a federal habeas petition. Therefore, we affirm the district court's rejection of Hunt's claim that discretionary post-conviction review in Maryland violates the Due Process Clause.[12]
 
 
 29
 Hunt also raises an equal protection challenge to Maryland's system of post-conviction review. He contends that Maryland improperly distinguishes between defendants with constitutional claims cognizable on direct review, and those with claims that are only cognizable on post-conviction review. He claims that this unequal access to appellate review lacks a rational basis and violates equal protection guarantees. Thus, Hunt creates two classes of claims, rather than two classes of persons, and argues that these types of claims must be treated equally by Maryland. The State, however, has a legitimate interest in conserving judicial resources and need not provide the same review for each type of claim, particularly when Maryland already provides defendants with more than the constitutional minimum of opportunities for review. Therefore, we reject Hunt's claim that Maryland's discretionary post-conviction review system violates the Equal Protection Clause.
 
 V.
 
 30
 Hunt also appeals issues concerning the constitutionality of the methods of execution in Maryland. On March 25, 1994, Maryland changed its method of execution from lethal gas to lethal injection. Md.Ann.Code art. 27, Sec. 71. Death row inmates, such as Hunt, who were sentenced to death before the effective date of the statute could elect to be executed by lethal gas. 1994 Md.Laws ch. 5, Sec. 2. The refusal to choose would result in death by lethal injection. On May 24, 1994, the last day of the election period, Hunt chose to be executed by lethal gas.
 
 
 31
 Hunt first argues that the Maryland choice provision violates the Eighth Amendment because forcing a person to choose the method of his execution is cruelly inhumane. The Ninth Circuit recently addressed this issue in Campbell v. Wood, 18 F.3d 662 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994). In Campbell, the defendant challenged the Washington death penalty statute as cruel and unusual because it allowed him to elect lethal injection instead of death by hanging. The Ninth Circuit upheld the statute and concluded that:
 
 
 32
 We cannot say the State descends to inhuman depths by allowing the condemned to exercise such an election. We believe that benefits to prisoners who may choose to exercise the option and who may feel relieved that they can elect lethal injection outweigh the emotional costs to those who find the mere existence of an option objectionable.
 
 
 33
 Id. at 688. We find the reasoning of the Campbell court persuasive, and we therefore hold that the Maryland choice provision does not violate the Eighth Amendment.
 
 
 34
 Hunt next argues that Maryland's death penalty statute is unconstitutional because it requires a choice between two methods of execution that are inherently cruel and unusual.[13] Hunt first claims that executions by lethal gas violate the Eighth Amendment. For support, he cites Fierro v. Gomez, 865 F.Supp. 1387 (N.D.Cal.1994). In Fierro, the United States District Court for the Northern District of California declared California Penal Code Sec. 3604 unconstitutional to the extent that it requires or permits execution by lethal gas[14] because evidence strongly suggested that pain experienced by those executed by this method was cruel and unusual and because society had overwhelmingly rejected this method of execution. Id. at 1413-15.[15]
 
 
 35
 Despite the court's thorough opinion, we decline Hunt's invitation to become the first court to follow the reasoning in Fierro. Lethal gas currently may not be the most humane method of execution--assuming that there could be a humane method of execution--but the existence and adoption of more humane methods does not automatically render a contested method cruel and unusual. Before Fierro, a number of courts had held that execution by lethal gas did not violate the Eighth Amendment. See, e.g., Gray v. Lucas, 710 F.2d 1048, 1060-61 (5th Cir.), cert. denied, 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983); State v. Lopez, 175 Ariz. 407, 857 P.2d 1261, 1271 (1993), cert. denied, --- U.S. ----, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994); Calhoun v. State, 297 Md. 563, 468 A.2d 45, 68-70 (1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984); Billiot v. State, 454 So.2d 445, 464 (Miss.1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1232, 84 L.Ed.2d 369 (1985). Furthermore, we agree with the district court in Hunt's case that "graphic descriptions of the death throes of inmates executed by gas are full of prose calculated to invoke sympathy, but insufficient to demonstrate that execution by the administration of gas involves the wanton and unnecessary infliction of pain." Hunt III, 856 F.Supp. at 260; see also Campbell, 18 F.3d at 683.
 
 
 36
 Hunt also challenges, for the first time in his reply brief to this Court, executions by lethal injection. He claims that such executions violate federal drug statutes and could inflict cruel and inhumane treatment as a result of botched executions. Hunt's selection of execution by lethal gas and our determination that this method is constitutional, however, renders these arguments moot. Furthermore, appellate courts generally will not address new arguments raised in a reply brief because it would be unfair to the appellee and would risk an improvident or ill-advised opinion on the legal issues raised. United States v. Caicedo-Llanos, 960 F.2d 158, 164 (D.C.Cir.1992); see also United States v. Vogt, 910 F.2d 1184, 1198 (4th Cir.1990) (noting, but not invoking, procedural waiver of issue raised for first time in defendant's reply brief), cert. denied, 498 U.S. 1083, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991). Therefore, we decline to reach Hunt's challenges to execution by lethal injection.[16]
 
 VI.
 
 37
 Finally, we turn to Hunt's appeal of the district court's denial of his Rule 60(b) motion, which attempted to correct his habeas counsel's failure to include several cognizable claims in his initial habeas petition. After the district court denied Hunt's petition, this Court appointed the Office of the Federal Public Defender to serve as Hunt's "consultant." Upon reviewing Hunt's case, it was discovered that his habeas counsel had neglected to raise certain direct appeal claims in his petition. Hunt's habeas counsel clearly did not omit these claims for strategic purposes,[17] and the State concedes that the mistake resulted from an honest, unintentional omission. Hunt's counsel promptly notified the state and filed a Rule 60(b) motion to vacate the judgment and to amend the habeas petition.
 
 
 38
 The district court denied the motion because Hunt had not shown cause for his counsel's failure to include the claims in the original habeas petition. The court found that Hunt had been "represented by competent counsel on habeas corpus [who had] filed an almost 100 page petition." J.A. 765. The court also noted that errors by counsel short of ineffective assistance do not constitute cause for considering claims omitted from petitions for collateral relief. Id. (citing Murray v. Carrier, 477 U.S. 478, 487-88, 106 S.Ct. 2639, 2644-45, 91 L.Ed.2d 397 (1986)). The court concluded that Hunt could not show a violation of the Sixth Amendment because the guarantee against ineffective assistance does not apply to post-conviction proceedings, including federal habeas petitions. Id. (citing Crowe v. United States, 175 F.2d 799, 801 (4th Cir.1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950)).
 
 A.
 
 39
 Hunt challenges the district court's decision to apply the cause and prejudice abuse of writ standard for successive habeas petitions under Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts[18] instead of the more equitable standards of timeliness, prejudice, and likelihood of success on the merits under Rule 60(b) of the Federal Rules of Civil Procedure.[19] In Jones v. Murray, 976 F.2d 169, 172 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 27, 120 L.Ed.2d 951 (1992), this Court analyzed a Rule 60(b) motion raising identical grounds for relief as an earlier habeas petition both as a successive habeas petition and under traditional Rule 60(b) principles. However, Jones and other cases cited by Hunt did not determine whether a district court could properly consider a Rule 60(b) motion only as an abusive successive habeas petition. See, e.g., Giarratano v. Procunier, 891 F.2d 483, 487 (4th Cir.1989), cert. denied, 498 U.S. 881, 111 S.Ct. 222, 112 L.Ed.2d 178 (1990); Waye v. Townley, 884 F.2d 762, 764 (4th Cir.), cert. denied, 492 U.S. 937, 110 S.Ct. 29, 106 L.Ed.2d 634 (1989); Williams v. McKenzie, 576 F.2d 566, 570 (4th Cir.1978).
 
 
 40
 The Eighth Circuit addressed this issue in Blair v. Armontrout, 976 F.2d 1130 (8th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2357, 124 L.Ed.2d 265 (1993). In Blair, the district court had ruled that new claims raised by the defendant in his Rule 60(b) motion constituted an abusive habeas petition because the defendant had not established cause and prejudice to excuse their absence from his first habeas petition. The Eighth Circuit held that the district court did not err in treating the Rule 60(b) motion as a second habeas petition. Id. at 1134 (citing Lindsey v. Thigpen, 875 F.2d 1509, 1511-12, 1515 (11th Cir.1989)).
 
 
 41
 We agree with the Eighth Circuit's reasoning and hold that a district court may properly treat a Rule 60(b) motion as a successive habeas petition and require that the defendant show cause and prejudice for the failure to raise the claims in an earlier petition. Hunt's habeas counsel omitted claims that would have been cognizable on federal habeas review. The new claims raised in Hunt's Rule 60(b) motion were equivalent to additional habeas claims. Therefore, Hunt's Rule 60(b) motion constituted a successive habeas petition, which the district court properly analyzed under habeas Rule 9(b).[20]
 
 B.
 
 42
 Hunt argues in the alternative that even if the district court applied the proper standard to his Rule 60(b) motion, he established cause and prejudice. We review dismissals under habeas Rule 9(b) for abuse of discretion by the district court. See Miller v. Bordenkircher, 764 F.2d 245, 248-49 (4th Cir.1985).
 
 
 43
 Hunt claims that he satisfies the cause requirement because the omission of claims by his habeas counsel amounted to ineffective assistance of counsel. The Supreme Court has held that "[a]ttorney error that constitutes ineffective assistance of counsel is cause." Coleman v. Thompson, 501 U.S. 722, 753-54, 111 S.Ct. 2546, 2567, 115 L.Ed.2d 640 (1991).[21] The Court further held that a defendant does not have a constitutional right to counsel in state post-conviction proceedings and cannot allege constitutionally ineffective assistance in those proceedings. Id. at 755-57, 111 S.Ct. at 2567-69. Although the Coleman Court did not determine whether a defendant has a constitutional right to counsel in federal habeas proceedings, this Court has held that the Constitution does not require counsel for defendants who attack their judgments under 28 U.S.C. Sec. 2255. Crowe, 175 F.2d at 799. This Court also has noted that "attorney error in an initial habeas proceeding cannot serve as cause to review subsequent petitions." United States v. MacDonald, 966 F.2d 854, 859 n. 9 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 606, 121 L.Ed.2d 542 (1992). Because Hunt had no constitutional right to an attorney during his federal habeas proceeding, we find that the district court correctly ruled that he could not establish constitutional ineffective assistance of counsel as cause excusing his failure to raise claims in his first habeas petition.[22]
 
 
 44
 We note that Hunt also fails to demonstrate that he was prejudiced by the omitted claims. To establish prejudice, Hunt must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982). We have carefully reviewed the claims that were omitted from Hunt's habeas petition and find that none of them establishes the requisite prejudice.
 
 
 45
 Therefore, because Hunt has not demonstrated cause or prejudice, we hold that the district court did not abuse its discretion by denying Hunt's Rule 60(b) motion.
 
 VII.
 
 46
 For the foregoing reasons, we affirm the district court's denial of both Hunt's habeas petition and his Rule 60(b) motion.
 
 
 47
 AFFIRMED.
 
 
 
 [1]
 In Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the Supreme Court overruled Booth 's exclusion of victim impact statements
 
 
 [2]
 Hunt's trial counsel argued that the State could not prove that Hunt shot Officer Adolfo and, in the alternative, if Hunt did, he could not be guilty of first degree murder because he lacked the required deliberation or was intoxicated. This Court has held, however, that the presentation of inconsistent defenses does not necessarily constitute ineffective assistance. See Brown v. Dixon, 891 F.2d 490, 494-95 (4th Cir.1989) (presenting inconsistent defenses that the defendant did not commit murders or that he did them while drunk did not amount to ineffective assistance), cert. denied, 495 U.S. 953, 110 S.Ct. 2220, 109 L.Ed.2d 545 (1990)
 
 
 [3]
 Hunt also blames his trial counsel for failing to interview McGuigan before trial. McGuigan, however, stated that she would not have spoken with defense counsel. Given McGuigan's inconsistent statements at trial and trial counsel's treatment of the witness, we find that Hunt has not demonstrated that trial counsel's failure to try to interview McGuigan was unreasonable or that it prejudiced him
 
 
 [4]
 Hunt also challenges his trial counsel's cross-examination of State witnesses Kent Franklin and Officer Joseph Madden, which elicited unfavorable testimony regarding Hunt's previous jail term and his attempted escape from an officer who apprehended him in Tulsa. However, as the post-conviction court observed, most attorneys make some mistakes during cross-examination. See J.A. 732. We agree with the post-conviction court that mistakes made during the cross-examination of Franklin and Madden did not amount to ineffective assistance of counsel
 
 
 [5]
 Hunt's witnesses testified that on the day of the shooting he had been smoking "lovely" or "loveboat," a combination of marijuana soaked in PCP
 
 
 [6]
 For this reason, we also reject Hunt's claim of ineffective assistance regarding his resentencing counsel's failure to investigate and introduce into evidence the marijuana cigarette butt as a mitigating circumstance for sentencing purposes
 
 
 [7]
 The court declined to read resentencing counsel's hastily written instruction to the jury because the instruction did not make clear whether the twenty-year sentence would be served concurrently or consecutively to the punishment for first degree murder, a decision that the judge would make after the jury determined Hunt's sentence for the murder charge. See Hunt II, 583 A.2d at 226
 
 
 [8]
 We note that Harris is distinguishable because that case involved the reversal of the sentencing court's ruling that allowed the State to enter the presentence report into evidence with the sentences for related offenses redacted, not an ineffective counsel claim. Thus, Harris faced a lower burden of proof than Hunt, who must demonstrate a reasonable probability of a different outcome under Strickland. Additionally, Harris was convicted for armed robberies, which were statutory aggravating factors under Md.Ann.Code art. 27, Sec. 413(d)(10). Therefore, Harris' jury would have been more likely to consider his sentences as mitigating circumstances than Hunt's jury would have been for the handgun sentence. Finally, because Harris had a number of other convictions, including two for armed robbery, and Hunt only had one, Harris' jury was much more likely than Hunt's to sentence the defendant for both the capital and related offenses
 
 
 [9]
 Judge Angeletti's concerns were well-founded. As the Court of Appeals of Maryland concluded, "Hunt was a significant escape risk. He fled the scene and left the State after murdering Officer Adolfo. While in prison, he feigned an illness so that he would be sent to the hospital to 'see what my chances were for freedom.' ... He was twice cited for possession of weapons [in prison while awaiting sentencing]." Hunt II, 583 A.2d at 229
 
 
 [10]
 In Maryland, appellate review of a circuit court's grant or denial of post-conviction relief requires an application for leave to appeal. Md.Ann.Code art. 27, Sec. 645-I; Md.Rules 8-204, 8-306(e); see Williams v. State, 292 Md. 201, 438 A.2d 1301, 1303 (1981)
 
 
 [11]
 Maryland also provides an automatic and mandatory direct appeal in capital cases. Md.Ann.Code art. 27, Sec. 414; Md.Rule 8-306; see Thanos v. State, 332 Md. 511, 632 A.2d 768, 774 (1993)
 
 
 [12]
 Likewise, we reject Hunt's contention that the Eighth Amendment requires automatic appellate review of all claims arising out of a capital proceeding. We recognize the need to ensure the reliability in the imposition of a death sentence, see Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986), but we conclude that Maryland's discretionary review of postconviction claims does not impermissibly weaken the reliability in Hunt's death sentence
 
 
 [13]
 The district court held that, because Hunt did not raise this claim during any of the state court proceedings and did not show cause or prejudice to excuse his default, he could not raise the claim on habeas. Hunt III, 856 F.Supp. at 260. Hunt, however, contends that he could not have raised this claim earlier because it involved a challenge to the Maryland death penalty statute that was amended after the state court proceedings. We address the merits of his argument because we find that this claim is intertwined with his challenge to Maryland's choice provision
 
 
 [14]
 In 1992, the California legislature amended Sec. 3604, which previously had provided for execution only by lethal gas, to allow executions by lethal gas or lethal injection. Cal.Penal Code Sec. 3604(a). Persons sentenced to death and awaiting execution before the operative date of the amendment could select either method, with lethal gas as the default method for those who refused to choose. Id. Sec. 3604(d)
 
 
 [15]
 The defendants in Fierro did not challenge the constitutionality of execution by lethal injection. Therefore, the court did not rule on Sec. 3604(d), which provided that if either method of execution were held invalid, then death sentences would be imposed by the alternative method
 
 
 [16]
 Even if we were to address Hunt's claims involving lethal injection, we note that no court thus far has found execution by this method unconstitutional or in violation of federal drug statutes. Moreover, many states have switched to this method because it is perceived to be a more humane method of execution
 
 
 [17]
 During state post-conviction proceedings Hunt was represented by two private attorneys who took his case as assigned public defenders. Although these attorneys had never filed a habeas petition before, they reluctantly filed Hunt's petition. See J.A. 763. They had not handled Hunt's trial, sentencing, or direct appeal in state court. Because the claims raised on direct appeal of Hunt's conviction and sentence could not be challenged during state post-litigation proceedings, habeas counsel did not deal with claims that had been litigated on direct appeal
 
 
 [18]
 Habeas Rule 9(b) provides that:
 A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.
 Rules Governing Section 2254 Cases, Rule 9(b).
 
 
 [19]
 Rule 60(b) provides that:
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representation from a final judgment, order, or proceedings for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment.
 Fed.R.Civ.P. 60(b).
 
 
 [20]
 Hunt also makes the procedural argument that because the government never affirmatively pleaded abuse of the writ, his Rule 60(b) claims should not have been analyzed under the cause and prejudice standard. See McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (holding that the government satisfies its burden of alleging abuse of the writ by notifying the court that the petitioner has filed a previous petition, identifying claims in the successive petition that were not raised before, and alleging abuse of the writ). Hunt further complains that the district court denied his Rule 60(b) motion sua sponte without notice or a hearing on the issues of cause and prejudice
 Hunt's Rule 60(b) motion, however, apprised the court of all the relevant information to determine abuse and indicated that Hunt was aware of the abuse issue and thus had an opportunity to respond. Therefore, the district court could address abuse of the writ without an affirmative pleading by the State. Cf. United States v. Oliver, 865 F.2d 600, 603-605 (4th Cir.) (holding that notice and opportunity to respond requirements do not apply to motions under 28 U.S.C. Sec. 2255 when the district court is already familiar with the record), cert. denied, 493 U.S. 830, 110 S.Ct. 98, 107 L.Ed.2d 62 (1989).
 
 
 [21]
 In Murray v. Carrier, 477 U.S. 478, 486-87, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986), the Supreme Court noted that, absent ineffective assistance of counsel, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default."
 
 
 [22]
 Although Hunt correctly claims that he has a statutory right to counsel in habeas proceedings under 21 U.S.C. Sec. 848, the Supreme Court has held that "[i]n the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney error made in the course of the representation...." Coleman, 501 U.S. at 754, 111 S.Ct. at 2567 (emphasis added)