64 F.3d 660
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond HORVWALT, Defendant-Appellant.
 No. 93-5193.
 United States Court of Appeals, Fourth Circuit.
 Argued May 5, 1995.
Decided Aug. 14, 1995.
 
 ARGUED: Calvin Willie Wood, Morgantown, WV, for Appellant. Sherry L. Muncy, Assistant United States Attorney, Elkins, WV, for Appellee. ON BRIEF: William D. Wilmoth, United States Attorney, Elkins, WV, for Appellee.
 Before RUSSELL, WIDENER, and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant-Appellant Raymond Horvwalt appeals his convictions for offenses relating to two post office burglaries. Finding that his various challenges to his convictions lack merit, we affirm.
 
 I.
 
 2
 On May 28, 1992, a grand jury in the Northern District of West Virginia returned a five-count indictment against Horvwalt. The indictment charged Horvwalt with: (1) one count of conspiracy to burglarize a post office in violation of 18 U.S.C. Secs. 371 and 2115 (Count One); (2) two counts of burglary of a post office in violation of 18 U.S.C. Secs. 2115 and 2, one count from an incident on October 19, 1991 (Count Two), and another count from an incident on November 22, 1991 (Count Three); (3) one count of interstate transportation of stolen property valued in excess of $5,000 in violation of 18 U.S.C. Secs. 2314 and 2 (Count Four); and (4) one count of interstate transportation of a stolen vehicle in violation of 18 U.S.C. Secs. 2312 and 2 (Count Five).
 
 
 3
 A jury trial was held on November 12, 13, 16, and 17, 1992. Codefendants John Simpkins and Timothy Horvwalt, the Appellant's brother, had pled guilty to charges arising from the burglaries, and they testified against Horvwalt at the trial. The government presented evidence at trial showing that Horvwalt and John Simpkins broke into the post office in Dellslow, West Virginia, on October 19, 1991, and November 22, 1991. Although they took nothing during the first burglary, on the second burglary, they stole a 1,700 pound safe, some cash, postage stamps, several money orders, and a money order printer.
 
 
 4
 On November 17, 1991, the jury convicted Horvwalt on all counts. The district court sentenced Horvwalt to 57 months as to Count One and 57 months as to Counts Two through Five, to run concurrently with Count One.
 
 II.
 
 5
 Horvwalt first contends that the government's failure to disclose exculpatory and impeaching evidence to him violated his right to a fair trial under the Due Process Clause. In his brief, Horvwalt lists thirty statements and investigations regarding his case and alleges that the police compiled reports of these incidents. He argues that the government's failure to submit these reports to him violated Brady v. Maryland, 373 U.S. 83, 87 (1963) (requiring government to furnish defendant with all exculpatory evidence that is material to the outcome of the trial), and Giglio v. United States, 405 U.S. 150, 154-55 (1972) (requiring government to furnish defendant with material evidence affecting the credibility of government witnesses). Similarly, Horvwalt argues that the government violated Brady and Giglio by not disclosing prior conflicting statements of co-defendant John Simpkins, who testified at trial. Horvwalt asserts that this lack of disclosure hindered his ability to cross-examine Simpkins because portions of Simpkins' trial testimony conflicted with portions of his grand jury testimony.
 
 
 6
 In pretrial discovery motions filed on July 7, 1992, Horvwalt served the government with blanket requests covering police investigative reports and Simpkins' prior statements. In his motions, he requested, inter alia: (1) "any notes, or other relevant information whatsoever, concerning the arrest of any other person connected with this case, whether subsequently indicted or not"; (2) "[t]he written statements of any and all persons who have knowledge of this case"; and (3) all material, tangible evidence related to the case. Joint Appendix (J.A.) 42-44. Horvwalt also requested "any statements made by the said Johnny G. Simpkins and/or Timmy Horvwalt, oral or written, which conflict with any other statements, information, or evidence in the possession of the Government or its agents." J.A. 36. After a hearing on Horvwalt's discovery motions, the magistrate judge ordered the government to disclose all Brady and Giglio materials, but the judge did not identify what specific evidence constituted Brady and Giglio materials. Rather, the judge held that the government should initially determine what evidence constituted Brady and Giglio materials, subject to Horvwalt's ability to seek judicial review.
 
 
 7
 The government contends on appeal that it had no Brady evidence and that it disclosed all Giglio evidence to the defense counsel.[1]
 
 
 8
 In addressing Horvwalt's argument, we note initially that Horvwalt has not presented evidence that all the police reports and conflicting statements he claims were suppressed actually exist. Assuming these documents do exist, we recognize that Horvwalt must first make at least a preliminary showing that these documents contain exculpatory or impeaching information in order to compel production under Brady or Giglio. See United States v. Roach, 28 F.3d 729, 734 (8th Cir.1994). Regarding the alleged police reports, Horvwalt offers no evidence that the reports contain such exculpatory or impeaching information. More importantly, Brady and Giglio require only the disclosure of evidence that is "material." The Supreme Court has reasoned that evidence is material when "its suppression undermines confidence in the outcome of the trial," such that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 678, 682 (1985), quoted in United States v. Kelly, 35 F.3d 929, 936 (4th Cir.1994). In determining the likelihood of a different outcome, a reviewing court must evaluate the suppression omission of evidence in light of the totality of the circumstances. Bagley, 473 U.S. at 683. Having evaluated Horvwalt's alleged omissions in light of all the evidence presented at trial, we conclude that it is not reasonably probable that any purported suppression of police reports altered the result of his trial.
 
 
 9
 For similar reasons, we reject Horvwalt's argument that any failure to disclose Simpkins' conflicting statements violated Horvwalt's due process rights. Although disclosing such statements would have aided Horvwalt's ability to impeach Simpkins, we are confident that the result of his trial was not affected by Simpkins' unexpected changes in his testimony. The changes cited by Horvwalt include only minor changes in Simpkins' testimony. Horvwalt received the transcript of Simpkins' grand jury testimony prior to trial, and he entered the testimony into evidence at trial. Furthermore, defense counsel cross-examined Simpkins for over eight hours, during which time defense counsel questioned Simpkins about inconsistencies between his trial testimony and his grand jury testimony. Horvwalt also was able to impeach Simpkins due to Horvwalt's awareness of Simpkins' plea agreement and past criminal history. We thus conclude it is not reasonably probable that any purported suppression of Simpkins' conflicting statements altered the result of Horvwalt's trial.[2]
 
 III.
 
 10
 Horvwalt next argues that the search of the bar he operated, named RJ's Lounge, and its connecting apartment violated his rights under the Fourth Amendment. He contends that the evidence seized from the search should therefore have been suppressed at trial. Government agents conducted the search on May 28, 1992, with the consent of John Simpkins and Ronald Simpkins, John's brother. Because Horvwalt was a convicted felon, he could not get a liquor license for RJ's Lounge. The bar was thus licensed in the names of John and Ronald Simpkins.
 
 
 11
 Horvwalt specifically argues that the warrant was invalid because John and Ronald did not have the authority to give consent to the search. Although he does not dispute that John and Ronald were listed on the liquor license for RJ's Lounge, Horvwalt contends that he financed the business, signed the lease for the building, and fired John on April 4, 1992, weeks before John signed the consent form entitling the government to search the bar. He further contests John and Ronald's authority to consent to the search of the connecting apartment because they knew that they did not have the right to go into the apartment. Horvwalt adds that Lisa Friend, a waitress at the bar who occupied the apartment, had a key to lock the apartment when she left.
 
 
 12
 The parties debate whether Horvwalt properly objected in the district court proceedings to the admission of evidence seized from the search. However, regardless of whether he properly preserved the issue for appeal, Horvwalt offers no evidence to demonstrate that the officers did not possess a reasonable, good faith belief that John and Ronald Simpkins had the authority to consent to the search. If the officers had such a belief, Horvwalt's Fourth Amendment rights were not violated and the evidence seized from the bar need not be suppressed. See Illinois v. Rodriguez, 497 U.S. 177, 186 (1990) (holding that warrantless search does not violate defendant's Fourth Amendment rights when search is based upon consent of third party whom officers reasonably believe possesses authority over searched premises); United States v. Kinney, 953 F.2d 863, 866-67 (4th Cir.), cert. denied, 504 U.S. 989 (1992). Horvwalt argues that John and Ronald knew that they did not have the authority to consent to the search of the bar and Lisa Friend's apartment, but he does not present any evidence that the officers were unreasonable, or acted in bad faith, in relying on John and Ronald Simpkins' consent. Horvwalt does not dispute that John's name appeared as "president" of RJ's Lounge on the liquor license and that John signed the consent form to search the bar. Horvwalt also does not dispute that Ronald's name appeared as "vice president" of RJ's Lounge on the license and that Ronald also signed the consent form. We therefore find that the officers reasonably, and in good faith, believed that John and Ronald possessed the authority to consent to the search, and we reject Horvwalt's argument that the search violated his Fourth Amendment rights and that evidence seized from the search should have been suppressed.
 
 IV.
 
 13
 Horvwalt next contends that the government violated his right to due process by failing to provide him with a videotape of the search of RJ's Lounge. One of the officers participating in the search, Trooper Paul Ferguson of the West Virginia State Police, made a videotape of the search. At trial, Trooper Ferguson testified that he had made this videotape on his own tape and personal video camera because West Virginia State Police did not provide video cameras for such purposes. He stated that from time to time he would use his camera to record "bad car crashes" or similar occasions in which a videotape would be helpful. He also testified that he recorded over the tape of the bar search with an interview of John Simpkins.[3] Horvwalt now argues on appeal that the government intentionally taped over the footage of the search because it showed "misconduct of the searchers, consisting of local, state and federal enforcement officers, who not only mistreated Mr. Horvwalt, but ... [drank] his beer and other alcoholic beverages, and [ate] his food." Appellant's Br. at 3.
 
 
 14
 In Arizona v. Youngblood, 488 U.S. 51, 58 (1988), the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Horvwalt offers no evidence to support his argument that the government destroyed the evidence in bad faith. At trial, defense counsel did not ask Trooper Ferguson about the contents of the tape of the search, and Trooper Ferguson's testimony reveals that it was mere inadvertence that caused him to tape over portions of the search. See United States v. Sanders, 954 F.2d 227, 231 (4th Cir.1992) (defendant's due process rights were not violated when videotape of bank robbery was inadvertently erased). We thus find that the inadvertent erasure of the tape of the search does not constitute a denial of due process.
 
 V.
 
 15
 Horvwalt finally argues that the government violated his due process rights by referring, before the jury, to the garage where the defendants broke the post office safe as "Raymond's garage." Horvwalt argues that such a characterization was unfair because the garage, in fact, was located on a farm in Dilliner, Pennsylvania, owned by his mother. He argues that the reference was "extremely prejudicial" because it gave the jury the impression that the garage was Raymond's "chop shop" where he regularly chopped up cars and safes. Appellant's Reply Br. at 5-6.
 
 
 16
 According to the three citations provided by defense counsel at oral argument, the only statements implying that Horvwalt owned the garage occurred during the cross-examinations of John Simpkins and Timothy Horvwalt by the defense counsel. We find that the two references to the garage as "Raymond's garage"[4] and the other reference implying that Raymond owned the garage[5] do not constitute reversible error. Regardless of whether Raymond actually owned the garage and whether these references constitute error, these isolated statements were harmless beyond a reasonable doubt in light of the extensive testimony of John Simpkins and Timothy Horvwalt connecting Raymond Horvwalt to the crime. See Arizona v. Fulminante, 499 U.S. 279, 306-08 (1991) (holding that trial errors of constitutional import do not warrant reversal if they are harmless beyond a reasonable doubt).
 
 VI.
 
 17
 For the foregoing reasons, we affirm Horvwalt's convictions.
 
 AFFIRMED
 
 
 [1]
 Although the government argues that it was entitled to refuse discovery of any alleged police reports under Rule 16(a)(2) of the Federal Rules of Criminal Procedure, this rule does not override the constitutional mandates required by Brady and Giglio. Fed.R.Crim.P. 16, Notes of Advisory Committee on Rules, 1974 Amendment
 
 
 [2]
 In his reply brief, Horvwalt argues that the government violated Giglio by not providing Horvwalt with any juvenile records of Steve Randolph, John Simpkins, and Timothy Horvwalt. Although we generally do not consider new issues raised in a reply brief, Hunt v. Nuth, Nos. 94-4006, 94-4010, 1995 WL 377373 (4th Cir. June 27, 1995), this argument clearly lacks merit because, assuming these records exist, we find that it is not reasonably probable that their disclosure would have altered the result of Horvwalt's trial
 
 
 [3]
 Horvwalt admits that he received this taped-over videotape from the government
 
 
 [4]
 The first reference during the cross-examination of John Simpkins reads:
 Q: You last saw the safe parts after it had been cut up going up the hill on the truck, going up on top of--Horvwalt farm on the hill.
 A: I said we took it up to the top of the hill. When I am talking about the top of the hill, it is right above where Raymond's garage is.
 J.A. 165.
 The second reference during the cross-examination of Timothy Horvwalt reads:
 Q: You have a garage there that you work out of?
 A: No, that is Raymond's garage.
 Q: What you call Raymond's garage, right? How long ago did he build that?
 A: Before he went to jail in '88.
 J.A. 198.
 
 
 [5]
 This reference during the cross-examination of John Simpkins reads:
 Q: Mr. Simpkins, when you took the truck up to Pennsylvania, Raymond's mother's farm, what did you do then, please?
 A: What did we do then?
 Q: Yes, sir.
 A: Well, when we got there, Raymond has got a two-car garage there. We backed the truck into his garage....
 J.A. 162.