**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                            No. 98-4741

SAMUEL C. LITTEN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CR-97-409-PJM)

Submitted: September 30, 1999

Decided: November 18, 1999

Before MURNAGHAN and WILLIAMS, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

James Wyda, Federal Public Defender, Michael T. CitaraManis,
Assistant Federal Public Defender, Greenbelt, Maryland, for Appel-
lant. Lynne A. Battaglia, United States Attorney, Steven M. Dettel-
bach, Assistant United States Attorney, Jan Paul Miller, Assistant
United States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Samuel Litten was convicted of one count of bank fraud, 18 U.S.C. § 1344 (1994), six counts of bankruptcy fraud, 18 U.S.C. § 152 (1994), and one count of criminal contempt, 18 U.S.C. § 401 (1994), and sentenced to thirty-seven months imprisonment, followed by three years of supervised release, and restitution of $129,800. Litten appeals from two of the bankruptcy fraud counts and the criminal contempt conviction and raises two claims regarding the calculation of his sentence. For the reasons that follow, we affirm.

Litten was a successful real estate developer in Southern Maryland. In 1991, he became involved in a dispute with First National Bank of Maryland over a $1.2 million loan. On July 12, 1993, the day before First National's suit against him was to go to trial, Litten filed voluntary petitions under Chapter 11 of the bankruptcy code, personally and on behalf of his wholly-owned corporation, Litten Builders, Inc. Litten operated Litten Builders, Inc. as a debtor in possession until May 1994, when Waring Justis was appointed by the bankruptcy court as co-manager of the bankruptcy estates.* The order appointing Justis provided that all business decisions had to be agreed to by both Litten and Justis. A trustee was appointed in July 1994. The reorganization plan, which was confirmed in July 1995, called for liquidation of most of Litten's real estate assets.

The Government produced evidence of numerous acts of bankruptcy fraud committed by Litten over an extended period; however, Litten challenges the sufficiency of the evidence only with respect to Counts Two and Seven. In Count Two, Litten was charged with

_____

*Upon filing a petition under Chapter 11 of the Bankruptcy Code, a debtor obtains the title of "debtor-in-possession." 11 U.S.C. § 1101(1) (1994).

2

defrauding the bankruptcy estate by selling property to his daughter at below market price. Specifically, the property--located at 721 Mills Way, Annapolis, Maryland--was owned by Keyser Homes, another of Litten's wholly-owned corporations. Keyser sold the property, valued at $212,500, to Litten and his daughter on August 20, 1993, for $170,000. Litten did not notify the bankruptcy court or any of his creditors of the sale.

Count Seven arose out of the sale of another property located at 10309 Lord Nelson Street in Upper Marlboro, Maryland. Although Litten entered into the sales contract while he was debtor in possession, the closing took place one day after Justis was appointed co-manager of the estate. Litten never notified Justis of the sale nor did he obtain bankruptcy court approval.

Finally, Count Nine arose out of Litten's conduct during the trustee's attempt to sell another of the estate's assets, Massum Eyrie, a 220-acre farm and historic house located on the Chesapeake Bay in St. Mary's County, Maryland. The order confirming the plan of reorganization required Litten to cooperate with the liquidating trustee in the sale of the property. Later orders issued by the bankruptcy court also required Litten to cooperate in the showing of the property and prohibited him from interfering with the liquidating trustee's attempts to sell any assets. Nevertheless, at the auction on November 13, 1996, Litten blockaded the entrance road to the property and handed out flyers stating that the auction was illegal and asking potential buyers not to bid on the property.

Litten was convicted by a jury of seven of the eight counts in the indictment. He noted a timely appeal.

Litten first claims that the evidence was insufficient to establish bankruptcy fraud in Count Two because the property at issue did not belong to the estate but to Keyser Homes, Inc. However, the Bankruptcy Code clearly provides that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541 (1994). Litten owned 100% of the stock in Keyser Homes, Inc., which, in turn, owned 721 Mills Way. Accordingly, the property became property of the estate

3

by virtue of Litten's ownership of Keyser Homes, Inc., and, therefore, the evidence was sufficient to convict him on Count Two.

Second, Litten challenges the sufficiency of the evidence with respect to Count Seven because the sales contract for 10309 Lord Nelson Street was entered into during the ordinary course of business while he was debtor in possession. However, the evidence clearly established that the closing took place after the bankruptcy court appointed Justis as co-manager of the estate and that the sale violated the terms of that order.

Next, Litten claims that Count Nine was constructively amended at trial. However, we find that Count Nine was not constructively amended, nor did a variance occur that prejudiced Litten. See United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996) (holding that variance violates defendant's rights only if he can prove he was prejudiced by variance); United States v. Floresca , 38 F.3d 706, 710 (4th Cir. 1994) (en banc) (holding that for constructive amendment to have occurred, the court's jury instruction must have exposed defendant to criminal "charges that are not made in the indictment itself").

Litten next challenges the two-level adjustment in his sentence for abuse of a position of trust. See U.S. Sentencing Guidelines Manual § 3B1.3 (1997). The district court's decision to apply the adjustment is reviewed for clear error. See United States v. Helton, 953 F.2d 867, 869 (4th Cir. 1992). As debtor in possession, Litten held a position of trust. See United States v. Levy, 992 F.2d 1081, 1084 (10th Cir. 1993) (applying adjustment to debtor in possession in bankruptcy fraud proceeding). Accordingly, the district court did not clearly err in applying the two level enhancement for abuse of a position of trust. In his reply brief, Litten additionally contends that the adjustment was improper because it was already taken into account in his base offense level and therefore constituted double-counting. This court ordinarily will not address new arguments raised for the first time in the reply brief. See Hunt v. Nuth, 57 F.3d 1327, 1338 (4th Cir. 1995). Accordingly, we grant the Government's motion to strike this portion of Litten's reply brief.

Finally, Litten contends that the district court erred in calculating the amount of loss to be attributed to him with respect to the sale of

4

721 Mills Way under USSG § 2F1.1(b)(1). The government need only establish the amount of financial loss by a preponderance of evidence. See United States v. Harris, 882 F.2d 902, 907 (4th Cir. 1989). The amount of loss under § 2F1.1 need not be determined with precision; rather, the district court need only make a reasonable estimate given the available information. See USSG§ 2F1.1, comment (n.8). The district court's finding in this regard is reviewed for clear error. See United States v. Castner, 50 F.3d 1267, 1274 (4th Cir. 1995). The property at issue was valued at $212,500. The district court determined that, because the property was subject to a mortgage of $170,000, the actual loss suffered by the estate was $42,500 (i.e., the value of the property less the mortgage amount). We find that the district court's calculation--based on testimony and documentary evidence establishing the value of the property--was a reasonable estimate of the loss given the available information. Therefore, the court did not clearly err in determining the amount of loss with respect to the sale of 721 Mills Way.

We therefore affirm Litten's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately addressed in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

5