**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-1527**

_____

DEREK J. HARVEY,

Plaintiff – Appellant,

v.

CABLE NEWS NETWORK, INCORPORATED,

Defendant – Appellee,

and

LEV PARNAS; JOSEPH A. BONDY,

Defendants.

_____

**No. 21-1535**

_____

DEREK J. HARVEY,

Plaintiff,

v.

CABLE NEWS NETWORK, INCORPORATED,

Defendant – Appellee,

and

LEV PARNAS; JOSEPH A. BONDY,

Defendants,

v.

JOSEPH LEE MEADOWS,

                    Movant – Appellant.

————————————————

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, Senior District Judge.  (1:20-cv-03068-RDB)

————————————————

Argued:  March 8, 2022                               Decided:  September 2, 2022

————————————————

Before GREGORY, Chief Judge, THACKER, and HARRIS, Circuit Judges.

————————————————

Affirmed in part, vacated in part by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Thacker and Judge Harris joined.

————————————————

**ARGUED:**  Steven Scott Biss, LAW OFFICE OF STEVEN S. BISS, Charlottesville, Virginia; Gregory M. Lipper, CLINTON & PEED, Washington, D.C., for Appellants. Thomas G. Hentoff, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellee. **ON BRIEF:**  Stephen J. Fuzesi, Nicholas G. Gamse, Anna J. Hrom, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellee.

————————————————

2

GREGORY, Chief Judge:

Appellant Derek Harvey appeals the district court's dismissal of his amended complaint filed against Cable News Network ("CNN") alleging defamation and false light invasion of privacy. Harvey challenges the district court's finding that his amended complaint failed to cure deficiencies identified in his initial pleading. He and his counsel also appeal the court's award of fees, expenses, and costs pursuant to 28 U.S.C. § 1927 and the court's inherent authority based on a finding that the amended complaint "unreasonably multiplied the proceedings." J.A. 320.[1]

For the reasons that follow, we affirm the district court's finding that Harvey's amended complaint failed to state a claim of either defamation or false light invasion of privacy. But we vacate the district court's award of sanctions, finding that the court abused its discretion in awarding them where the record does not support a finding that Harvey or his counsel filed the amended complaint in bad faith.

I.

United States Army Colonel Derek Harvey retired in 2006 following a 26-year military career as an intelligence officer and Middle East Foreign Area Officer. He was appointed to the National Security Council in 2017, and later that year became a Senior Advisor to United States Congressman Devin Nunes of California. Harvey alleges that his

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

reputation for "integrity, honesty, ethics, judgment and performance" was "valuable" and "necessary in his practice and profession." J.A. 107.

In November 2019, Rep. Nunes was the Chairman of the House Select Permanent Committee on Intelligence. He was considered the "top Republican on the House Intelligence Committee," "one of Trump's key allies in Congress," and "a staunch defender" of the former President during his first impeachment trial, where it was alleged that Trump, "[u]sing the powers of his high office . . . solicited the interference of a foreign government, Ukraine, in the 2020 United States Presidential election." H.R. Res. 755, 116th Cong., art. I (2019). Early in the impeachment investigation, various news outlets reported that a focus of the investigation was the effort of Trump's personal attorney, Rudy Giuliani, to press the Ukrainian government to investigate former Vice President and 2020 presidential candidate Joseph Biden, and that Giuliani was working with a Ukrainian-born American businessman, Lev Parnas, among others, in this effort.[2] Parnas had recently

---

[2] For example, The Washington Post reported on October 10, 2019, that Parnas "had been helping Giuliani investigate . . . Biden" and that "[s]ince late 2018, [Parnas] ha[d] been assisting Giuliani's push to get Ukrainian officials to investigate Biden and his son . . . ." *See* Devlin Barrett, John Wagner & Rosalind S. Helderman, *Two Business Associates of Trump's Personal Lawyer Giuliani Have Been Arrested and are in Custody*, Wash. Post (Oct. 10, 2019, 7:00 PM), https://www.washingtonpost.com/politics/two-business-associates-of-trumps-personal-lawyer-giuliani-have-been-arrested-and-are-in-custody/2019/10/10/9f9c101a-eb63-11e9-9306-47cb0324fd44_story.html (last visited August 19, 2022). And on November 20, 2019, The Daily Beast published an article stating that "[Parnas had] helped arrange meetings and calls in Europe for [Rep. Devin Nunes] in 2018." Betsy Swan, *Lev Parnas Helped Rep. Devin Nunes' Investigations*, Daily Beast (Nov. 20, 2019, 7:58 PM), https://www.thedailybeast.com/lev-parnas-helped-rep-devin-nunes-investigations (last visited August 19, 2022). The Daily Beast article was introduced during the impeachment hearing the day after it was published. *See* H. Permanent Select Comm. on Intel. Impeachment Inquiry, 116th Cong. 146:9-21 (2019).

been indicted in New York for conspiring to disguise Ukrainian campaign donations to American federal and state political candidates in violation of federal campaign finance laws. Shortly thereafter, Parnas received a congressional subpoena as part of the impeachment investigation.

On November 22, 2019, CNN published an online article entitled *Exclusive: Guiliani associate willing to tell Congress Nunes met with ex-Ukrainian to get dirt on Biden*. J.A. 185–88. The author, CNN Senior Reporter Vicky Ward, reported that Parnas' criminal defense attorney, Joseph Bondy, told CNN that Parnas was "willing to comply with a congressional subpoena for documents and testimony as part of the impeachment inquiry in a manner that would allow him to protect his Fifth Amendment rights against self-incrimination." J.A. 186. Specifically, CNN reported that Parnas "was willing to tell Congress about meetings [Rep. Nunes] had in Vienna last year" with former Ukrainian Prosecutor General Viktor Shokin to "dig[] up dirt on Joe Biden." J.A. 185. Bondy said that Parnas learned of the meetings, held in December 2018, directly from Shokin.

According to the CNN article, "Bondy told CNN that his client and Nunes began communicating around the time of the Vienna trip," and that "Parnas says he worked to put Nunes in touch with the Ukrainian who could help Nunes dig up dirt on Biden and Democrats in Ukraine." J.A. 185. Bondy also told CNN that "Nunes planned the trip to Vienna after Republicans lost control of the House of Representatives in the November 6, 2018 mid-term elections." J.A. 187. "'Mr. Parnas learned through Nunes' investigator, Derek Harvey, that the Congressman had sequenced this trip to occur after the mid-term elections yet before Congress' return to session so that Nunes would not have to disclose the trip details to his

5

Democrat colleagues in Congress, said Bondy.'" *Id.* Ward reported that congressional travel records showed that "Nunes and three aides," Harvey among them, "traveled to Europe from November 30 to December 3, 2018." J.A. 186. But the article acknowledged that the travel records did "not specify that Nunes and his staff went to Vienna or Austria, and [that] Nunes was not required to disclose the exact details of the trip." *Id.*

"Bondy said according to his client, following a brief in-person meeting in late 2018, Parnas and Nunes had at least two more phone conversations, and that Nunes instructed Parnas to work with Harvey on the Ukraine matters. Parnas said that shortly after the Vienna trip, he and Harvey met at the Trump International Hotel in Washington, where they discussed claims about [Biden and his son Hunter] as well as allegations of Ukrainian election interference, according to Bondy." J.A. 187.

Bondy also told CNN that Parnas was willing to testify about "a series of regular meetings he says he took part in at the Trump International Hotel . . . that concerned Ukraine." *Id.* Bondy said that "Parnas became part of what he described as a 'team' that met several times a week" at the hotel that included, himself, Giuliani, and others and that "Harvey would occasionally be present as well" as "Nunes' proxy." *Id.*

CNN published its statements, including express references to Harvey, across its various digital, cable, and social media platforms in Maryland, where Harvey resides, and elsewhere. They were in turn republished by other news and social media outlets. Ward later appeared on a broadcast of CNN's *Cuomo Prime Time*, where she and anchor Chris Cuomo discussed the story, and where Cuomo called on Nunes to respond to the allegations.

Both Nunes and Harvey repeatedly declined to comment for the CNN article prior to publication, and "CNN was unable to reach Shokin for comment." J.A. 186. When Nunes was quoted elsewhere denying the story, Ward updated her article to reflect his denial.

In January 2020, Democrats on the House Intelligence Committee released and posted on a House website documents Parnas produced in response to the congressional subpoena. They included twenty pages of instant messages between Parnas and Harvey showing that the two men coordinated interviews with current and former Ukrainian prosecutors, including Shokin, as well as meetings at the Trump International Hotel. Following the Intelligence Committee's release of the subpoenaed documents, CNN tweeted about and provided a link to the documents and published another online report. Jeremy Herb & Manu Raju, *New impeachment documents show more texts about possible surveillance of former U.S. ambassador to Ukraine*, CNN (Jan. 18, 2020), https://www.cnn.com/2020/01/17/politics/lev-parnas-documents-january-17/index.html (last visited August 11, 2022). This report described "communications between Parnas and Nunes aide Derek Harvey, in which they arrange interviews with Ukrainian officials and apparent meetings at the Trump International Hotel in Washington, D.C." that "draw Nunes . . . even further into the efforts undertaken by Giuliani and his associates to . . . dig up dirt on the President's political rivals." J.A. 86, 87.

On October 21, 2020, Harvey filed a complaint against CNN, Parnas, and Bondy alleging defamation and false light invasion of privacy, seeking compensatory and punitive damages and an injunction to prevent further publication of the allegedly false and

defamatory statements.[3]  J.A. 43–52.  As to CNN, the complaint alleged that CNN's statements, including those made and published in the November 2019 online report, on *Cuomo Prime Time*, and in the January 2020 tweet and online report defamed Harvey by falsely accusing him of "participating in an effort to aid and abet . . . criminal, unethical, and dishonest conduct," "exposed [him] to public scorn, ridicule and contempt," and "imputed to him deception, lack of integrity, and ethical improprieties that severely prejudiced [him] in his employment" because they suggested his unfitness to perform the duties of his position as Nunes' advisor and investigator.  J.A. 15.

In the complaint, Harvey denied that he made a trip to Vienna.  He alleged instead that he and Nunes were part of a delegation that traveled to Libya and Malta to discuss security and intelligence issues, and that neither he nor Nunes met with any Ukrainian officials.  He further denied that Nunes deceived his congressional colleagues by timing the trip to avoid congressional disclosure requirements, or that he told Parnas that Nunes met or communicated with Shokin as part of an investigation of Biden.  Harvey characterized Parnas as "a known liar, con man and hustler, an indicted criminal defendant, who CNN knew had every reason to lie."  J.A. 30.  Harvey also claimed that CNN knew of Parnas' character and status as a "fraudster" and a "radioactive wolf in sheep's clothing,"

---

[3] The district court later dismissed the complaint as to non-resident defendants Parnas and Bondy without prejudice for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), finding that the exercise of jurisdiction over them was (1) not authorized under Maryland's "long-arm" statute, and (2) would not "comport with the due process requirements of the Fourteenth Amendment of the U.S. Constitution."  J.A. 60, 61.

and thus had "serious doubts as to Parnas' credibility, veracity and the truth and accuracy of his statements" when it published them. J.A. 39–40.

CNN moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. CNN argued that most of the challenged statements were not about Harvey, and the ones that were about him were not defamatory or materially false. CNN also claimed that the statements were privileged under Maryland law and that Harvey failed to plausibly allege actual malice.

The district court granted the motion to dismiss. In its memorandum opinion, the court gave several reasons for its finding that the complaint failed to state a claim. The court found that of the eight alleged defamatory statements that were in fact published by CNN, none of them supported a defamation claim. At the outset, the court reasoned that because "the House Republicans stated in the executive summary of the official House impeachment report [that] they believed there was 'nothing wrong with asking serious questions' about the Bidens and their dealings in Ukraine," "Harvey's arguments that it was defamatory for CNN to state or otherwise imply that he was assisting Nunes in investigation of a political rival are simply without merit." J.A. 76. The court then went on to explain "how the[] statements fail to state a claim for defamation for numerous other reasons." *Id.*

First, the court analyzed each statement and concluded that Harvey failed to plausibly claim how any of them were legally defamatory because they were not "concerning Harvey," defamatory, or materially false. J.A. 79. In one instance, the court also found that a challenged statement did not expose Harvey to public scorn, and in others, deemed the challenged statements mere statements of opinion.

9

Next, the court found that Harvey independently failed to state a claim because he had not met the additional requirement to show that the challenged statements were not privileged under the Maryland fair report privilege, which protects those who "report legal and official proceedings that are, in and of themselves defamatory, so long as the account is 'fair and substantially accurate.'" *Piscatelli v. Smith*, 35 A.3d 1140, 1149 (Md. 2012) (quoting *Chesapeake Publ'g Corp. v. Williams*, 661 A.2d 1169, 1174 (Md. 1995)). The court determined that the statements were privileged as (1) fair and accurate summaries of a report on the official impeachment proceedings, *see Nanji v. National Geographic Soc.*, 403 F. Supp. 2d 425, 434 (D. Md. 2005) (dismissing defamation claim where statements fairly and accurately reported on official proceedings), or (2) Bondy's summaries of what information his client Parnas was willing to provide in response to the House subpoena, *see Norman v. Borison*, 17 A.3d 697, 708-11 (Md. 2011) (recognizing absolute privilege for statements made by attorney of record extrinsic to judicial or quasi-judicial proceedings under certain circumstances).

Finally, the court found Harvey had failed to state a claim on a third ground—he could not plausibly allege actual malice as he is required to do as a public official. The court found the conclusory allegations in Harvey's complaint were insufficient to adequately plead falsity or reckless disregard for the truth. *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012). The court found the complaint was "devoid of any factual allegations with respect to the state of mind of reporters who published the article and tweets," and as to Ward, the only reporter identified by name, Harvey "fail[ed] to assert facts plausibly alleging that she subjectively knew the information to be false," or

10

"subjectively believed it to be probably false." J.A. 92; *see also N.Y. Times v. Sullivan*, 376 U.S. 254, 287 (1964) ("actual malice" standard is subjective). The court also noted that although CNN's reporting was based on information provided by recently-indicted Parnas, reliance on "tainted or troubled sources does not alone establish actual malice," *see Talley v. Time, Inc.*, 923 F.3d 878, 903 (10th Cir. 2019), and "including grounds for doubting a source," as CNN did here when it reported Parnas' allegations as mere "claims" and about his criminal charges, "may actually rebut a claim of malice." *See, e.g.*, *McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1304 (D.C. Cir. 1996); J.A. 93.

The court then dismissed Harvey's false light claim, which "must also meet the standards for defamation," for the same reasons. *Ross v. Cecil Cty. Dep't of Soc. Servs.*, 878 F. Supp. 2d 606, 624 (D. Md. 2012) (citing *Crowley v. Fox Broad Co.*, 851 F. Supp. 700, 704 (D. Md. 1994)).

But the district court did not dismiss Harvey's complaint with prejudice; it instead granted Harvey leave to amend within fifteen days "if Plaintiff possesse[d] facts to cure such manifest deficiencies addressed in [its] Memorandum Opinion." J.A. 99. In so doing, the court warned that "[s]uch an Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment." J.A. 99. Thus, while the court's initial dismissal was without prejudice, it ordered the clerk of court to dismiss the case with prejudice if a satisfactory amended complaint was not filed by March 4, 2021.

11

Harvey's lead counsel, Steven Biss, with the assistance of local counsel, Joseph Meadows,[4] electronically filed an amended complaint at "8:04 p.m." on the day that it was due, "after the clerk's office of [the district court] had closed and just hours before the deadline of midnight on March 4, 2021." J.A. 310, 319. In the Amended Complaint, Harvey dropped claims arising from statements not published by CNN, another from the *Cuomo Prime Time* segment, as well as others related to the January 2020 online report and tweets. He then merged certain statements that had previously been listed separately, thereby reducing the number of alleged defamatory statements from twenty to five. He added additional language supporting his claim of defamation, specifically referring to the statements as "materially false" and alleging that CNN falsely accused him of participating in and concealing a "shadow foreign policy," J.A. 136, and of "publishing derogatory statements concerning Nunes—[his] superior," J.A. 138, and that these false statements prejudiced him in his employment as a congressional advisor and "affect[ed] his fitness to be an intelligence officer – conduct that could cost him his security clearance and subject him to discipline." J.A. 139. He also removed his request for injunctive relief.

On March 12, 2021, CNN moved to dismiss the Amended Complaint, again for failure to state a claim, stating that it did not cure any of the deficiencies previously identified by the district court. CNN argued that the Amended Complaint was substantively identical

---

[4] Meadows represents to this Court that he has been a practicing attorney for 23 years and until this case had never worked with Biss or been disciplined or sanctioned by any court or bar.

12

to the original and its amendments consisted largely of conclusory additions and deletions of text rather than the addition of new and material factual allegations.

CNN further maintained that "[b]y persisting in pressing materially the same allegations that this Court already held do not state a claim," the filing of the Amended Complaint "unnecessarily prolongs and multiplies this proceeding." J.A. 171. In a footnote to the final sentence of its memorandum in support of dismissal, CNN asked the court to award it "fees, costs, and expenses for the filing of this motion to dismiss the Amended Complaint, pursuant to 28 U.S.C. § 1927 and this Court's inherent authority, because the filing [of] a near-identical Amended Complaint has multiplied the proceedings unreasonably and vexatiously." J.A. 183 n.12.

In response, Harvey stated—also in a footnote—that "Plaintiff and his Counsel need not respond to an argument—as opposed to a motion—for sanctions," relying on Federal Rule of Civil Procedure 7(b)(1) and Local Rule 105.8(b). J.A. 283 n.14. He also argued that he had amended his complaint in good faith to address the issues the district court raised in its opinion, and that CNN had failed to show bad faith on the part of Harvey or his counsel that would warrant an award of sanctions. *Id.*

CNN's reply on the sanctions issue was again in a footnote. It argued that although it had not filed a motion, the sanctions request was "properly before the Court," citing authority that a separate motion was not necessarily required to request sanctions. CNN also discussed warnings issued by other courts to Harvey's lead counsel in cases involving clients Meadows did not represent and in litigation in which Meadows played no role. *See*

13

J.A. 300 ("[C]ourts in this Circuit already have warned [Biss] about the potential for sanctions on multiple occasions . . . .").

The district court granted the motion to dismiss the Amended Complaint with prejudice on grounds consistent with CNN's motion to dismiss. The court agreed that the Amended Complaint was a mere "repetition of the original Complaint with no new material factual allegations" that "failed to remedy the deficiencies of [Harvey's] original Complaint." J.A. 308, 313. The court reaffirmed that dismissal was warranted on multiple independent grounds, including that the statements did not have defamatory meaning, were privileged, and the Amended Complaint did not plausibly allege either material falsity or actual malice.

On the issue of sanctions, the court noted that Harvey was permitted to file an Amended Complaint only if he possessed facts to cure the deficiencies addressed in the court's opinion and warned of its dismissal if he did not. The court recognized that "Harvey made some additions to his Amended Complaint that were presumably meant to address this Court's concerns that none of the statements were actually defamatory," but the "additions d[id] not aid the Plaintiff's case" and the cases he cited were distinguishable. J.A. 315. The court held that "[t]he filing of such an Amended Complaint is the sort of bad faith courts have repeatedly found to merit sanctions under 28 U.S.C. § 1927 and the courts' inherent authority to sanction," J.A. 319, and that "Harvey and his counsel unreasonably and vexatiously extended this matter in bad faith with the filing of a last-minute Amended Complaint which did not in any way seek to cure the deficiencies previously addressed by [the] Court." J.A. 308. Invoking both its statutory and inherent

14

authority, the court found it appropriate to sanction Harvey, Biss, and Meadows, ultimately assessing fees, costs, and expenses totaling $21,489.76 against them.

Meadows retained his own counsel and moved for reconsideration of the sanctions order, raising both due process and substantive issues and asserting that his role in preparing the Amended Complaint was limited "by the time given him to review said complaint, the scope of his agreed-upon role as local counsel, and his day-of-deadline exercise of legal judgment in deciding to permit the amended complaint to be filed." J.A. 361–62. The district court denied the motion on the ground that the amendments to the complaint "were minimal, superficial, and did nothing to address the Court's concerns," and therefore "unreasonably multiplied the proceedings." J.A 382.

This appeal followed. Harvey and Biss appealed the dismissal of the Amended Complaint and the award of sanctions, while Meadows filed a separate appeal of the court's sanctions award.

## II.

This Court reviews *de novo* an order granting a motion to dismiss. *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018). In ruling on a motion to dismiss, the court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Driver Opportunity Partners I, L.P. v. First United Corp.*, No. CV RDB-20-2575, 2021 WL 82864, at *1 (D. Md. Jan. 8, 2021) (quoting *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017)).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* A plaintiff must plausibly allege facts that, if proven, would be sufficient to establish each element of the claim. Accordingly, we must examine each of the alleged defamatory statements and determine whether Harvey has, with respect to any of them, established all of the elements of a claim of defamation. Where a plaintiff fails to state a claim in his amended complaint after having been "advised with specificity of the legal deficiencies" in the initial complaint, dismissal with prejudice is appropriate. *Watkins v. Wash. Post*, No. PWG-17-818, 2018 WL 805394, at *8 (D. Md. Feb. 9, 2018) (citing *Weigel v. Maryland*, 950. F. Supp. 2d 811, 825-26 (D. Md. 2013)).

16

III.

A.

To establish a prima facie case of defamation under Maryland law,[5] a plaintiff must sufficiently allege "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Rabinowitz v. Oates*, 955 F. Supp. 485, 488 (D. Md. 1996) (citing *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1236 (4th Cir. 1989)). "A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." *Batson v. Shiflett*, 602 A.2d 1191, 1210 (Md. 1992) (citing *Bowie v. Evening News*, 129 A. 797, 799 (Md. 1925)). A defamatory statement must also "refer to some ascertaining or ascertainable person, and that person must be the plaintiff." *Great Atl. & Pac. Tea Co. v. Paul*, 261 A.2d 731, 736 (Md. 1970). "'A false statement is one that is not substantially correct.'" *Batson*, 602 A.2d at 1212; *see also Nanji*, 403 F. Supp. 2d at 431 (explaining that a statement is only false if it is "not substantially correct").

---

[5] Jurisdiction in the district court was based on diversity of citizenship under 28 U.S.C. § 1332(a), thus Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

B.

In finding that the Amended Complaint remained insufficient to state a claim of defamation, the court concluded that (1) the Amended Complaint "ha[d] done nothing to address this Court's concerns that the statements have little [to] do with Harvey at all," J.A. 314; (2) it "failed to address the fact that none of the statements are materially false," *id.*; (3) the additional allegations made to address the court's concerns that the statements were not defamatory "d[id] not aid[] Harvey's case," J.A. 315; and (4) it "fail[ed] to show that CNN made any of the allegedly defamatory statements with actual malice" as required by his status as a public official. J.A. 316. Harvey has also appealed the district court's earlier ruling that the statements are also protected by Maryland's fair report privilege. We have examined Harvey's Amended Complaint and agree with the district court that his amendments failed to address the deficiencies identified in the initial complaint.

1.

The first element of defamation requires a plaintiff to allege that a particular statement is about him, false, and defamatory. Harvey's Amended Complaint narrowed his allegations to five purportedly defamatory statements. J.A. 102–04. In summary, CNN reported that Parnas intended to testify that Nunes and three aides, including Harvey, went to Vienna where Nunes met several times with Shokin, that Nunes recruited Parnas in an effort to merge his investigative operations with Giuliani's, and that Nunes directed Harvey to meet with Parnas to discuss how to "reach out to . . . various Ukraine prosecutors, who might have information on the Bidens." J.A. 103. The statements also included the allegation that Parnas learned through Harvey that the trip was deliberately timed to avoid

18

disclosing details about the trip to House Democrats.  This statement is independently corroborated in part by the Congressional Record, which documents that Nunes, Harvey, and others went to Europe during the relevant time period, although it does not reveal the purpose of the trip or with whom they met.  Finally, CNN reported that Parnas' attorney said Parnas would testify that after the trip, he and Harvey met at the Trump International Hotel to discuss "claims about the Bidens."  J.A. 102.

Despite Harvey's efforts to address the district court's concerns that this element was not sufficiently pled, most of the statements Harvey complains of continue to be about Nunes.  Of those that are about Harvey, they say that he was part of the entourage that accompanied Nunes to Vienna, and that Nunes directed him to meet, and that he did meet, with Parnas to discuss reaching out to Ukrainian prosecutors who might have information on the Bidens.  But Harvey has again failed to establish that these statements are either materially false or defamatory.  As the district court found, "[t]he statements allege nothing more than that Harvey was a source of information about Nunes" or that he was a "subordinate acting in compliance with the orders of his superior."  J.A. 314.

In his Amended Complaint, Harvey attempted to address the court's concern that he had not established that the statements were false, but without alleging any new facts, these amendments did nothing to address the conclusory nature of his assertion that the statements are untrue.  *See Iqbal*, 556 U.S. at 678.  Adding the words "materially false" to the statements does not make them so, and any "[m]inor inaccuracies do not amount to falsity so long as the substance or gist is justified."  *Nanji*, 403 F. Supp. 2d at 431; *see also Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) ("[W]here the alleged

19

defamatory 'sting' arises from substantially true facts, the plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for libel.") (citing *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990)).

And even though Harvey denies attending any meeting or having any discussions with Parnas about reaching out to Ukrainian prosecutors who might have information on the Bidens and asserts that CNN's statements are entirely fabricated, J.A. 111–12; Appellants' Br. 22–23, instant messages disclosed during former President Trump's first impeachment proceedings show that Harvey worked with Parnas to arrange meetings with Ukrainian prosecutors and to plan subsequent meetings at the Trump International Hotel. *See* J.A. 178, 220–35. Harvey does not deny in his Amended Complaint that he engaged in these communications. Because the alleged defamatory "sting" in this case arises from the true fact that Harvey arranged for meetings with Ukrainian prosecutors, including Shokin, Harvey cannot rely on any minor or irrelevant alleged inaccuracies in the statements to support his defamation claim. *See Chapin*, 993 F.2d at 1092. Accordingly, Harvey has not pled sufficient facts to establish that the statements about him are materially false.

Harvey also made additions to his initial complaint to address the district court's conclusion that the statements were not defamatory. He added allegations that the statements "would adversely affect his fitness to be an intelligence officer," and "could cost him his security clearance and subject him to discipline," and that the false allegation that he published "derogatory statements concerning Nunes—Plaintiff's superior" was "highly prejudicial" to his position as Nunes' aide. J.A. 138–39. Presumably, these

20

additions were intended to support Harvey's assertion that the statements imputed to him demonstrated "unethical or improper conduct" in his profession as a congressional aide and intelligence officer, and that such statements are "universally found to be defamatory." *See, e.g.*, *Wagner v. Gibson*, No. CIV. WDQ-12-3581, 2013 WL 4775380, at *4 (D. Md. Sept. 4, 2013).

In *Wagner*, the statements at issue were deemed defamatory because they "imputed incapacity or lack of due qualifications." *Id.*; *see also Thompson v. Upton*, 146 A.2d 880, 883 (Md. 1958) (explaining that "libel" includes "publication that relates to a person's office, trade, business or employment, if the publication imputes to him some incapacity or lack of due qualifications"); *Siegert v. Gilley*, 500 U.S. 226, 228 (1991) (finding defendant's description of plaintiff as "both inept and unethical, perhaps the least trustworthy individual I have supervised in my thirteen years" defamatory.).  But no such implication was made here.  Unlike the statements in *Wagner*, *Thompson*, and *Siegert*, the allegedly defamatory statements about Harvey do not allege that he personally engaged in any misconduct or that he was otherwise incapable or lacked the qualifications to perform his duties; they only describe what he did as a subordinate acting on Nunes' orders. Allegations that Nunes was seeking to hide the purpose of the trip did not defame Harvey. Regardless of the reason for the timing of the trip, it complied with congressional disclosure requirements.[6]

---

[6] Harvey also objects to the district court's reliance, in part, on its conclusion that it was not defamatory for CNN to state or imply that Harvey was acting at Nunes' direction to gather information relating to a political rival because the Republican House leadership (Continued)

Moreover, that Harvey was purportedly the source of the information is not defamatory. *See Burrascano v. Levi*, 452 F. Supp. 1066, 1072 (D. Md. 1978) (accusing someone of being an informant is not libelous), *aff'd sub nom. Burrascano v. U.S. Att'y Gen.*, 612 F.2d 1306 (4th Cir. 1979). And "[s]tatements to the effect plaintiffs have a secret is not itself defamatory, even a politically explosive one." *Nunes v. Lizza*, 486 F. Supp. 3d 1267, 1282 (N.D. Iowa 2020); *see also McCafferty v. Newsweek Media Grp., Ltd.*, No. CV 18-1276, 2019 WL 1078355, at *4 (E.D. Pa. Mar. 7, 2019) (finding that defendant's statement that certain actions were taken to "camouflage a political agenda" was not defamatory), *aff'd*, 955 F.3d 352 (3d Cir. 2020). Thus, we agree with the district court that even with Harvey's amendments, the Amended Complaint still fails to sufficiently plead that CNN's statements about him were defamatory.

2.

a.

The district court also concluded that the Amended Complaint should be dismissed because Harvey failed to sufficiently plead that any of CNN's statements about him were made with actual malice. "[A] public official suing for defamatory statements relating to official conduct" must prove "by clear and convincing evidence, that 'the statement was

---

thought that there was "nothing wrong with asking serious questions about the Bidens and their dealings in Ukraine." J.A. 76 (citing H.R. Rep. No. 116-346, at 3-4 (2019) (H. Comm. on the Judiciary Report on the Impeachment of Donald J. Trump, President of the United States). He argues that the relevant audience that could find the statements defamatory was broader than the Republican Party leadership. We need not address this question. The district court clearly relied on multiple alternative grounds for the dismissal of the complaint, noting that it "failed to state a claim for defamation for numerous additional reasons." J.A. 76.

22

made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Hosmane v. Seley-Radtke*, 132 A.3d 348, 354 (Md. App.), *aff'd*, 149 A.3d 573 ( Md. 2016) (citing *N.Y. Times*, 376 U.S. at 279–80); *see also Samuels v. Tschechtelin*, 763 A.2d 209, 242 (Md. App. 2000) (citing *Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. App. 1995)) ("[A]ctual malice is established when the plaintiff shows, by clear and convincing evidence, that the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity."). We agree with the district court that the Amended Complaint did not sufficiently allege actual malice.

The district court first determined that Harvey was a public official required to plead and prove actual malice. Harvey, however, maintains that he was a private individual, not a public figure, and in any event, he plausibly alleged that CNN published the statements with actual malice.[7] And because he plausibly alleged a claim of defamation, the court erred in dismissing his false light claim and in granting CNN's request for an award of fees and costs. We find none of Harvey's arguments availing.

b.

As a preliminary matter, we affirm the district court's conclusion that Harvey was a public official. "[T]he 'public official' designation applies 'at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of government affairs.'" *Horne*

---

[7] Harvey has preserved for further appeal his argument that *N.Y. Times v. Sullivan* should be reconsidered. *See* J.A. 274–76; Appellant's Br. 25.

*v. WTVR, LLC*, 893 F.3d 201, 207 (4th Cir. 2018) (citing *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966)). "The public official category is by no means limited to upper echelons of government. All important government employees are subject to discussion by the people who employ them and by others who would comment on their behavior. Thus, a plaintiff with either actual or apparent substantial responsibility can be deemed a public official for purposes of a defamation claim." *Id.* (internal citations omitted) (citing *Rosenblatt*, 383 U.S. at 85–86).

Harvey argues that he should not have been required to plead actual malice because his role as a former member of the National Security Council and Nunes' Senior Advisor did not per se make him a public figure and that he did not voluntarily assume a prominent role in the public controversy surrounding the investigation of the Bidens or the former President's impeachment. We disagree. Harvey "held positions involving substantial direction and control of governmental affairs" and exercised "significant discretion" on Nunes' behalf. J.A. 96. *See McFarlane*, 74 F.3d at 1301 (aide to U.S. Senator found to be a public figure "having held various high-level positions" in government); *De Falco v. Anderson*, 506 A.2d 1280, 1284 (N.J. Super. Ct. App. Div. 1986) (former aide to U.S. Congressman deemed a public figure).

The authorities Harvey cites in support of his assertion that he is a private individual for purposes of his defamation claim are not persuasive. He asserts that our case is analogous to *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), where the court determined that the petitioner, an attorney hired to represent the family of a shooting victim in a civil action against a police officer, was not a public figure. Harvey maintains that he, like the

24

petitioner, is not a public figure because he did not "voluntarily assume a role of special prominence in this public controversy." *See id.* at 351. This case is clearly distinguishable. As the *Gertz* Court noted, "at the time of publication [the petitioner] had never held any remunerative governmental position," and his "appearance at the coroner's inquest" in a role "related solely to his representation of a private client" did not "render[] him a 'de facto public official.'" *See id.* at 351–52; *see also Wells v. Liddy*, 186 F.3d 505, 536–37 (1999) (explaining that the public exposure of a Democratic National Committee secretary during and after break-in did not support a finding that she "voluntarily assume[d] a role of special prominence" in the ongoing "public controversy" regarding Watergate). We agree with the district court that "[g]iven the perceivable and presumably actual importance of Harvey's [former] position, as well as his significant history of public service, including his appointment to the National Security Council," Harvey was "a public official and was therefore required to plead actual malice in this case." J.A. 97.

c.

Next, Harvey alleges as proof of actual malice that CNN fabricated statements falsely attributed to him, relied on a single, unreliable source, and failed to interview an important, easily accessible witness. But these conclusory allegations fall short. *See Mayfield*, 674 F.3d at 377–78 (explaining that conclusory allegations are insufficient to adequately plead knowledge of falsity or reckless disregard for the truth and that a plaintiff must plead enough facts to raise the existence of knowledge of falsity "above the speculative level."). The actual malice standard is subjective; whether the speaker knowingly uttered a falsehood or "in fact entertained serious doubts as to the truth of his

25

publication" is measured by the state of mind of "the persons . . . having responsibility for the publication." *Id.* at 287.

Harvey contends that CNN's statements were made with malice because they either knew the statements were false, or acted with reckless disregard for the truth. But his Amended Complaint did not add any new facts regarding the state of mind of the reporters who published the statements, and still does not plausibly allege that Ward or the other CNN reporters subjectively knew the information was false, or that it was subjectively false.

Harvey argues there were obvious reasons for CNN to doubt the veracity and accuracy of information received from Parnas, including his questionable character and his indictment on federal charges, but CNN instead minimized problems with his credibility and ignored information that would have demonstrated the falsity of his statements in order to facilitate the publication of a fabricated story. Harvey also asserts that malice was shown by CNN's failure to interview Shokin to verify that Parnas' story was false. Harvey characterized Shokin as an "easily accessible" witness, as evidenced by "the ease with which the Washington Post and [One American News Network] found [him]." J.A. 118–119, 123–128.

But "[c]ourts have consistently held that reliance on tainted or troubled sources does not alone establish actual malice." *Talley*, 923 F.3d at 903. Moreover, including the grounds for doubting a source, as CNN did here, may actually rebut a claim of malice. *McFarlane*, 74 F.3d at 1304. CNN reported that Parnas had been indicted on federal campaign finance charges, and characterized the statements made through his lawyer as "claims." CNN also acknowledged that Shokin had not verified whether the substance of Parnas' purported testimony was either true or false, reporting that "CNN was unable to reach Shokin for

26

comment." J.A. 186. Harvey has not offered any evidence that CNN's statement on this point was untrue. In sum, "'naked assertion[s]' devoid of 'further factual enhancement'" that a defendant has "failed to observe journalistic standards, conceived a storyline in advance and sought to find evidence to confirm that story, and relied on unreliable or biased sources in researching" a purportedly defamatory article, fail to plausibly allege malice. *Lizza*, 486 F. Supp. 3d, at 1297 (citing *Twombly*, 550 U.S. at 555, 557).

d.

Finally, Harvey fails to state a claim for defamation for the additional reason that he cannot show that any of CNN's statements are not privileged. *See Marinkovic v. Vasquez*, No. GLR-14-3069, 2015 WL 3767165, at *5 (D. Md. June 16, 2015) (explaining that to prevail on a claim for defamation, a plaintiff must prove all elements of defamation and that the statements are not privileged). Under Maryland law, the fair report privilege protects those who "report legal and official proceedings that are, in and of themselves defamatory, so long as the account is 'fair and substantially accurate.'" *Piscatelli*, 35 A.2d at 1149 (quoting *Chesapeake Publ'g Corp.*, 661 A.2d at 1174). "The privilege arises from the public interest in having access to information about official proceedings and public meetings." *Id.* (citation omitted).

The district court held, and we agree, that Harvey failed to state a claim because CNN's statements were privileged under the fair report privilege. The court properly found that CNN fairly and accurately reported on what Bondy said his client would say in response to the subpoena and summarized (and provided a link to) official documents from the impeachment proceedings that revealed Harvey's discussions regarding interviews

27

with Ukrainian prosecutors. *See Gubarev v. BuzzFeed, Inc.*, 340 F. Supp. 3d 1304, 1318–19 (S.D. Fla. 2018) (finding that where an article included a conspicuous hyperlink to documents related to an official proceeding, the ordinary reader could understand the article was a report on those proceedings and thus was protected by Florida's fair report privilege). None of Harvey's amendments to his initial complaint address the district court's holding on this issue.[8]

Nevertheless, Harvey maintains first that CNN published statements are not and cannot be subject to any fair report privilege because CNN did not report on any legal or official proceeding, Parnas never testified before the House Intelligence Committee, and the fact that he claimed he was willing to testify at some point before Congress did not trigger any privilege. These arguments are simply contrary to settled Maryland law. Harvey cannot show that the statements made by CNN were not privileged, and therefore

---

[8] We note that Maryland also recognizes an absolute privilege for statements made by an attorney of record in both judicial and quasi-judicial proceedings, as well as those made by an attorney of record extrinsic to such proceedings under certain circumstances. *Norman*, 17 A.3d at 708–11. Extrinsic statements are protected, among other circumstances, when such statements are "connected contextually" to a pending or ongoing judicial or quasi-judicial proceeding although "not designed necessarily to produce a proceeding or cause one to be filed." *Id.* at 710–11. "Connected contextually" means having "some rational, articulable relevance or responsiveness to [a] proceeding." *Id.* at 714. "Maryland courts recognize an absolute privilege for attorneys to make potentially defamatory statements if the statements have some rational relationship to the judicial proceedings." *Mixter v. Farmer*, 81 A.3d 631, 634 (Md. 2013). The absolute privileges accorded to attorneys and other participants in judicial proceedings work alongside the qualified fair report privilege "given to persons who report to others defamatory statements uttered during the course of judicial proceedings." *Rosenberg v. Helinski*, 616 A.2d 866, 872 (Md. 1992). Here, not only were CNN's published statements protected by the fair report privilege, Bondy's statements about which CNN reported were also privileged, as they were rationally related to the impeachment proceedings and thus absolutely privileged under Maryland law.

28

for this and all the foregoing reasons, he cannot state a claim for defamation under Maryland law.[9]

3.

Harvey's Amended Complaint also includes a claim for false light invasion of privacy. Under Maryland law, to succeed on a claim for false light, the plaintiff must show that (1) the defendant "g[ave] publicity to a matter concerning [the plaintiff] that place[d] the [plaintiff] before the public in a false light," (2) "the false light" "would be highly offensive to a reasonable person," and (3) the defendant knew or recklessly disregarded "the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." *Ostrzenski v. Seigel*, 177 F.3d 345, 252 (4th Cir. 1999) (internal citations omitted). But "[a] claim for placing [a] plaintiff in false light . . . may not stand unless the claim also meets the standards of defamation." *Watkins*, 2018 WL 805394, at *4; *see also Ross*, 878 F. Supp. 2d at 624 (D. Md. 2012) (same). Because Harvey has failed to state a claim for defamation, his false light claim fails as well.

IV.

Finally, Harvey challenges the district court's decision to award sanctions to CNN pursuant to both its inherent authority and 28 U.S.C. § 1927. We are convinced that under

---

[9] Because we affirm the district court's findings that Harvey failed to sufficiently plead actual malice and that CNN's statements are privileged, we need not address Harvey's additional argument that any privilege CNN had has been "forfeited" because the statements were made by an unreliable source—Parnas—and with actual malice.

either legal standard, the district court abused its discretion in sanctioning Harvey and his counsel.

Harvey and his counsel[10] argue that the district court abused its discretion in sanctioning them on both procedural and substantive grounds. They allege that the court failed to provide them with adequate process before imposing sanctions, and that the filing of the Amended Complaint did not justify an award of fees and costs. Sanctions under 28 U.S.C. § 1927 and the district court's inherent authority require severe misconduct reflecting clear bad faith, and they maintain that their conduct in no way met that standard.

A.

This Court reviews the award of sanctions pursuant to a court's inherent authority, and under 28 U.S.C. § 1927, for abuse of discretion. *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 518–19 (4th Cir. 2018) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) ("We review a court's imposition of sanctions under its inherent power for abuse of discretion." (internal citations omitted)); *EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012) ("Our review of a district court's decision concerning whether to award costs, expenses, and attorneys' fees under [28 U.S.C. § 1927] is for abuse of discretion." (internal citations omitted)). We review "the factual findings underpinning" a sanctions award "for clear error," *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 443 (4th Cir. 2011), and issues of law de novo. *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 423 (4th Cir. 1998). While "[a] district court's

---

[10] Meadows appealed separately on the issue of sanctions. Harvey and Biss have expressly adopted Meadows' arguments. *See* Appellant's Opening Br. at 29 n.13.

decision to impose sanctions is entitled to substantial deference," *Blue v. Dep't of Army*, 914 F.2d 525, 538 (4th Cir. 1990), abuse of discretion may be found where "'on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed.'" *Six*, 891 F.3d at 519 (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Federal courts' authority to sanction "derives from courts' 'certain "inherent powers," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."'" *Six*, 891 F.3d at 519 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017)). Courts are empowered "to fashion an appropriate sanction for conduct which abuses the judicial process," such as "an order . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Id.*

Similarly, Section 1927 authorizes a court to require "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. It also permits an award of sanctions "for bad-faith conduct that wrongfully multiplies proceedings." *Id.* at 520; *see also West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990) ("Section 1927 sanctions require a bad faith showing."). Inherent then, in both the court's authority to impose sanctions and in Section 1927, is an element of bad faith. Here, we are convinced that the district court

31

erred in sanctioning Harvey and his counsel[11] because the conduct the court cited as grounds for the award does not demonstrate bad faith, and there is no other evidence in the record that the Appellants undertook the effort to amend the complaint in bad faith.

B.

Harvey and his counsel cite two grounds for the vacatur of the district court's sanctions order. First, they argue that the court failed to provide them with required procedural protections before the imposition of sanctions. Second, the court did not establish an adequate basis to conclude that the Amended Complaint was filed in bad faith

---

[11] We reject CNN's argument that Biss failed to personally note an appeal of the sanctions award. A notice of appeal must "specify the party or parties taking the appeal by naming each one in the caption or body of the notice." Fed. R. App. P. 3(c)(1)(A); *Newport News Holdings Corp.*, 650 F.3d at 443. Biss has complied with the plain language of Rule 3(c)(1)(A). The body of the Notice of Appeal, as amended, provides: "Plaintiff/Appellant, Derek J. Harvey *and* his Counsel, Steven S. Biss . . . , hereby files this Amended Notice of Appeal, and notes his Appeal to the United States Court of Appeals for the Fourth Circuit from" the district court's order "awarding CNN fees and costs" and its subsequent order granting CNN its requested amount of attorney's fees and expenses. J.A. 399–400 (emphasis added). The body of the Notice of Appeal names Biss as a party taking the appeal. No further compliance with Rule 3(c)(1)(A) is required. *See also Lokhova v. Halper*, 30 F.4th 349, 353 (4th Cir. 2022) (Federal Rule of Appellate Procedure 3(c)(1)(A)'s "use of the disjunctive confirms the efficacy of naming the parties in either the notice's caption or its body").

CNN maintains that Biss' intent to appeal the sanctions award on his own behalf was not "objectively clear" in the Notice of Appeal. *See* Fed. R. App. P. 3(c)(7) (explaining that an appeal will not be dismissed "for failure to name a party whose intent to appeal is otherwise clear from the notice"); *In re United Refuse LLC*, 171 F. App'x 426, 430 (4th Cir. 2006) (quoting advisory committee notes to Rule 3(c) (intent to appeal must be "objectively clear.")). But this Court makes an "objectively clear" intent inquiry only when an appellant has "fail[ed] to name a party" who intends to appeal as required by Rule 3(c)(1)(A). *See* Fed. R. App. P. 3(c)(7). This is not the case here. Although unartfully done, Biss did manage to name himself, along with his client, as an appellant in this case.

and therefore abused its discretion in sanctioning them. We address each of these arguments in turn.

1.

Pursuant to Federal Rule of Civil Procedure 7, "[a] request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). The motion "must be in writing," "state with particularity the grounds for seeking the order;" and "state the relief sought." Fed. R. Civ. P. 7(b)(1)(A)-(C). Further, District of Maryland Local Rules require that each motion include a separate "memorandum setting forth the reasoning and authorities in support of it," D. Md. Local R. 105.1, and that judges request responses before granting sanctions motions, *see* D. Md. Local R. 105.8(b).

CNN did not file a separate motion for the imposition of sanctions. Instead, CNN—in a single-sentence footnote on the last page of its memorandum in support of its motion to dismiss the Amended Complaint—argued that "CNN should be awarded fees, costs, and expenses for the filing of th[e] motion to dismiss the Amended Complaint . . . because the filing [of] a nearly identical Amended Complaint has multiplied the proceedings unreasonably and vexatiously," and cited, without discussion, a string of cases in support of its demand. J.A. 183. The Appellants contend that the district court, in ruling on a request for sanctions made in a footnote rather than requiring a formal motion afforded them no meaningful opportunity to respond as required by the district court's local rules, or to address the circumstances related to Meadows' filing of the Amended Complaint as local counsel. CNN nevertheless argues that its footnote seeking sanctions satisfies the

33

requirements of Rule 7, and further that even in the absence of a motion, the district court had the discretion to consider its request.

First, we find no merit in CNN's argument that its request for sanctions has met the requirements of either Rule 7 or the applicable local rules. Our Court addressed similar circumstances in *Cozzarelli v. Inspire Pharmaceuticals*, 549 F.3d 618 (4th Cir. 2008). There, the plaintiffs "never filed a motion for leave to amend" or "present[ed] the district court with a proposed amended complaint." *Id.* at 630. They "instead requested leave to amend only in a footnote of their response to defendants' motion to dismiss, and again in the final sentence of their objections to the recommendation of the magistrate judge." *Id.* This Court found that "[t]hose requests did not qualify as motions for leave to amend, *see* Fed. R. Civ. P. 7(b), 15(a), and we cannot say that the district court abused its discretion by declining to grant a motion that was never properly made," *Id.* at 630–31 (citing *United States ex rel. Williams v. Martin–Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004)).

Thus, we turn to whether the court denied Harvey and his counsel process, and thereby abused its discretion, in granting a request for sanctions that did not comply with the procedural requirements of Rule 7(b) or the applicable local rules. Certainly, this Court has warned against ruling on a "minimally addressed" issue based on arguments only raised in a footnote, as it is "'unfair'" to the opposing party "'and would risk an improvident or ill-advised opinion on the legal issues raised.'" *Sanders v. Callender*, No. CV DKC 17-1721, 2018 WL 337756, at *7 (D. Md. Jan. 9, 2018) (quoting *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995)). "This reasoning has led district courts to decline to consider arguments only raised in a footnote." *Id.*

34

But in undertaking the necessary review in this case, we must acknowledge that despite the absence of a formal motion and their assertion that they "need not respond to an argument—as opposed to a motion—for sanctions," J.A. 283 n.14, Harvey and his counsel *did* respond to CNN's sanctions request, asserting (with the support of several citations to case law) that the complaint was amended in good faith and that CNN had failed to show bad faith on their part that warranted the "drastic" award of sanctions for amending the complaint. *Id.* And CNN replied, stating that a "separate motion is not necessarily required to request § 1927 sanctions," *Meathe v. Ret*, 547 F. App'x 683, 691 (6th Cir. 2013), and that the district court's inherent power to order sanctions is "organic, without need of a statute or rule for its definition," *Kaur v. Grigsby*, No. PWG-17-7, 2017 WL 4050229, at *2 (D. Md. Sept. 13, 2017) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)). On the merits, CNN reiterated that the proceedings were multiplied by the filing of a nearly-identical Amended Complaint that did nothing to cure the deficiencies, and this bad faith conduct warranted sanctions. Thus, the district court, having received written argument on both the procedural and substantive issues, ruled on the request without further briefing or a hearing. And Meadows' opportunity to be heard on the issue of sanctions did not end there. He moved the court to reconsider the imposition of sanctions and filed an accompanying memorandum in support to which CNN responded. In light of these facts, and where there were ample opportunities to object, we cannot conclude, under the unique circumstances of this case, that it was an abuse of discretion for the district court to consider the sanctions request without a formal motion. *See Meathe*, 547 F. App'x at 691 (explaining that a "separate motion is not necessarily required to

35

request § 1927 sanctions" where the issue is "squarely presented before the court" through argument in the brief in opposition to motion for leave to amend).

2.

Turning to the merits, we address whether the district court abused its discretion in awarding sanctions based on a finding of bad faith. The district court invited Harvey to amend his complaint within fifteen days if he "possesse[d] facts to cure such manifest deficiencies addressed in [its] Memorandum Opinion," J.A. 99, and warned that an amended complaint that did not cure the deficiencies would be dismissed with prejudice. In dismissing the Amended Complaint, the court found that "Harvey and his counsel unreasonably and vexatiously extended this matter in bad faith with the filing of a last-minute Amended Complaint which did not in any way seek to cure the deficiencies previously addressed by this Court," J.A. 308, and that its filing was "the sort of bad faith" that courts have found to merit sanctions under 28 U.S.C. § 1927 and under a court's inherent authority to sanction. J.A. 319.

CNN maintains that the district court was well within its discretion to award sanctions for filing a substantially duplicative complaint that violated the court's conditional leave to amend and that required CNN and the court to expend time and resources in response. But Harvey and his counsel maintain that they did not act in bad faith or willfully abuse the judicial process, nor did the filing of the Amended Complaint unreasonably or vexatiously multiply the proceedings. They argue that sanctions under 28 U.S.C. § 1927 and the district court's inherent authority both require severe misconduct reflecting clear bad faith. Their conduct, they assert, reflects instead their *good faith* effort

36

to serve their client's interests and to prevent dismissal of the action in the face of challenging circumstances, and that proceedings in this case—unlike cases in which sanctions are typically awarded—were extended by only a few weeks. We conclude that the district court abused its discretion in awarding sanctions. The record does not support a finding that Harvey and his counsel undertook the effort to amend the complaint and to survive CNN's motion to dismiss in bad faith.

To review the district court's award of sanctions, we examine the court's findings and its explanation for making the sanctions award. *See Tenkku v. Normandy Bank*, 348 F.3d 737, 743 (8th Cir. 2003) ("In imposing sanctions under § 1927, the district court must make findings and provide an adequate explanation so that we may review its determination that sanctions were warranted." (citing *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718–19 (8th Cir. 1999)). The district court relied on certain facts in finding that Harvey and his counsel "unreasonably and vexatiously extended [the] matter in bad faith." J.A. 308. The court first characterized the Amended Complaint as "last-minute," *id.*, noting that it was filed electronically after the clerk's office closed and "just hours" before the midnight deadline. J.A. 319. But ultimately, evidence that the Amended Complaint was filed just before the deadline at the end of a prescribed 15-day period set by the court does not establish bad faith or otherwise support a conclusion that counsel sought to "unreasonably" or "vexatiously" extend the proceedings. These facts carry little weight given the short period of time provided for amendment and filing.

Of more concern is that the Amended Complaint did not cure the deficiencies in Harvey's initial complaint. There is no dispute that the district court warned Harvey of

37

dismissal with prejudice should his Amended Complaint fail to allege facts to cure the deficiencies identified by the court. But when a district court grants leave to amend a complaint and later finds, as it often does, that an amended complaint continues to fail to state a claim, the typical outcome is dismissal of the amended complaint, not an award of sanctions against the litigant and his counsel for making an attempt. Although Harvey's effort to amend was unsuccessful, his filing of a single amended complaint does not, under the circumstances presented here, demonstrate a level of egregiousness, a pattern of misconduct, or result in protracted litigation to the extent that this Court and others have found bad faith that warranted sanctions.

Although the district court decided, and we now affirm, that the Amended Complaint fell short of stating a claim of either defamation or false light invasion of privacy, we cannot conclude that the amendments were made in bad faith. As the district court acknowledged, "Harvey made some additions to his Amended Complaint that were presumably meant to address this Court's concerns that none of the statements were actually defamatory," but concluded the "additions d[id] not aid the Plaintiff's case" and that the cases he cited were distinguishable. J.A. 315. Harvey made several amendments that were more than "minimal" or "superficial." J.A. 382. Harvey's counsel reduced the number of defamatory statements from twenty to five, deleting statements the court found were not about Harvey. He also deleted his requests for damages and an injunction because the court had already held that they would not state a claim. He then added allegations that the statements were "materially false," tended to expose him to "public scorn, hatred, contempt or ridicule," defamed him in his capacity as a congressional advisor and

38

intelligence officer, and could jeopardize his security clearance. In the end, however, the court found that Harvey had not pled sufficient facts to support his amended allegations. But we cannot conclude that these efforts are equivalent to those we have found sanctionable.

In its Memorandum Opinion, the district court likened the conduct of Harvey and his counsel to that of litigants who were sanctioned under materially different circumstances and for far more egregious conduct. None of the cases the district court cites persuade us that Harvey's filing of a single Amended Complaint, where the original complaint was dismissed *without* prejudice and where the court *invited* him to amend, justifies the sanctions award.

For example, the court in *Wages v. IRS*, 915 F.2d 1230 (9th Cir. 1990), affirmed sanctions against a *pro se* litigant who "attempt[ed] to file an amended complaint that did not materially differ from one which the district court had already concluded did not state a claim," concluding that it "evidenced bad faith in multiplying the proceedings . . . 'unreasonably and vexatiously.'" *Id.* at 1235. But in that case, the court had dismissed an initial complaint with prejudice after advising the litigant that "amending her complaint would not cure the fundamental defects in her action." *Id.* at 1233. Yet the litigant proceeded to file an amended complaint that was substantially the same as the one the court dismissed.

The same is true of *Sweetland v. Bank of Am. Corp.*, 241 F. App'x 92 (4th Cir. 2007). There, the court affirmed a sanctions order where the litigant "pursued [his] claims well after he knew that evidentiary support for the allegations would not be forthcoming";

39

"stall[ed] the discovery process through evasive and nonresponsive answers," causing "the magistrate judge [to] impose[] monetary sanctions"; "fil[ed] a baseless summary judgment motion"; and made "intentional misrepresentations for the purpose of obtaining a settlement from the defendants." *Id.* at 97. The court found he engaged in "unreasonable and vexatious" conduct "that increased the cost of the proceedings." *Id.* at 98.

Finally, the district court found support for its sanctions award in *In re Brown*, 126 B.R. 615 (Bankr. M.D. Fla 1991). The court awarded sanctions on the grounds that the plaintiff's counsel filed an amended complaint that was an "almost verbatim" version of the initial complaint that "did not even attempt to cure the defects which had been found to exist in the original Complaint," and thereby "unreasonably multipl[ied] proceedings by requiring the Court to review two Complaints and hold hearings on two Motions To Dismiss." *Id.* at 617. For these transgressions, the court sanctioned him $300. *Id.*

Our Circuit provided a more recent example of the type of conduct that constitutes bad faith and that "unreasonably or vexatiously" extends the proceedings in *Six v. Generations Federal Credit Union*, 891 F.3d at 508. We affirmed the imposition of sanctions against three attorneys and their law firms where they "acted in bad faith and vexatiously and violated their duty of candor by hiding a relevant and potentially dispositive document from the Court" for nearly two years and thereby "multiplied the proceedings, wasted court resources, misled the Court, and caused [the defendant] to incur unnecessary attorney's fees." *Id.* at 517–18.

The cases upon which the district court relies as examples of sanctionable conduct involve fraud, deceit, misrepresentation, harassment, and unethical conduct. Harvey and his

40

counsel's conduct did not rise to the level of misconduct that those courts have found supports a finding of bad faith. Indeed, the circumstances presented in this case are more akin to *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912 (11th Cir. 2003), where the plaintiffs appealed the district court's imposition of Rule 11 sanctions against them for filing an amended complaint. The Eleventh Circuit found the sanctions award was an abuse of discretion because the plaintiffs had filed the amended complaint only after the district court concluded that the plaintiffs were not seeking the proper remedy to vindicate their rights, but then identified deficiencies in their pleadings and gave them leave to amend. *Id.* at 916.

Finally, we acknowledge that CNN incurred attorneys' fees and costs in responding to the Amended Complaint. But absent a finding that it was filed in bad faith or to unreasonably or vexatiously extend the case, we cannot conclude that it was within the district court's discretion to compensate CNN for its time and expense in doing so.[12]

V.

For the foregoing reasons, we affirm the dismissal of Harvey's defamation and false light claims, but vacate the award of sanctions against Harvey and his attorneys, Biss and Meadows.

*AFFIRMED IN PART, VACATED IN PART*

---

[12] Because we find that the district court's award of sanctions is not justified under the circumstances, we do not address the assertion that Meadows' "circumstances as local counsel" should have precluded the district court from sanctioning him.

41